HENDRY, Judge.
Appellant-plaintiff Eighth Air Depot, Inc., seeks review of a final judgment entered in favor of appellee-defendant Pan American Airways Inc., (PAA), pursuant to defendant’s motion for a directed verdict at the close of all the evidence in a jury trial. We affirm the judgment.
*565 Eighth Air Depot’s shipping ticket and packing list, dated December 21, 1968, were delivered simultaneously with an engine to PAA on December 27, 1968; PAA signed and dated them. The shipping ticket and packing list were the only shipping instructions PAA received from Eighth Air and PAA did not inquire of Eighth Air as to whether they had any further instructions. The engine was placed in PAA’s On Hand Department and an on hand tag was made by PAA’s traffic representative. He had some question as to who the shipper was and so marked the on hand tag.
PAA sent an on hand notice to Products Support Industries, Inc. as the delivery receipt and shipping ticket showed that the engine had been sold -to it. Thereafter, PAA, through its agent, received instructions from Products Support Industries for the preparation of an air waybill. The waybill when delivered to PAA was accompanied by an original invoice and a shipper’s export declaration.
Without notice to or inquiry of Eighth Air, PAA shipped the engine to the Dominican Republic on the air waybill in question. After a passage of almost one year, Eighth Air Depot inquired as to the whereabouts of their money or engine and were advised that the engine had been shipped on Products Support Industries’ air waybill and that the money had been collected and paid to Products Support Industries. PAA’s check to that company was introduced into evidence.
PAA had available at its cargo facilities and other locations copies of the applicable tariff and a document informing a shipper as to the means of instructing PAA in the preparation of an air waybill.
Appellant has argued that it was entitled to a summary judgment; we disagree. Appellant next argues that the lower court erred in admitting into evidence the tariff provisions and air waybill. These items were properly admitted. Migoski v. Eastern Air Lines, Fla.1953, 63 So.2d 634; see also our discussion below. We also hold that the directed verdict was properly entered, based upon the following authorities and discussion.
Pursuant to 49 U.S.C. § 1373, Pan American World Airways, Inc., an air carrier, at all times material to this action filed with the Civil Aeronautics Board a complete tariff. The tariff governs the shipment of cargo and the legal relationship with persons with whom the air carrier deals.[1]
The applicable tariff provisions designate the shipper as the person whose name appears on the air waybill as the party contracting with the carrier for the carriage of goods:
“Rule 1: Definitions: * * * Shipper, which is equivalent to the term Consignor, means the person whose name appears on the air waybill as the party contracting with Carrier for carriage of the goods.”
*566 Eighth Air Depot did not appear on the waybill and did not contract with the carrier for the carriage of the goods.
Assuming that Eighth Air Depot had a contract with the carrier, then the following provision in the tariff governs. It provided that the shipper must deliver an air waybill to the carrier simultaneously with the cargo, and if no air waybill is delivered with the cargo, the carrier may have the air waybill prepared at the risk of the shipper:
“Rule 3: Execution of Air Waybill:
“(A) Preparation by Shipper: The shipper shall make out, or have made out on his behalf, an air waybill in the form, manner and number of copies prescribed by Carrier, and shall deliver such air waybill to Carrier simultaneously with the acceptance of the cargo by Carrier for carriage * *
5jí iji * ‡ % *
“(D) Responsibility for Particulars: The shipper is responsible to Carrier and all other persons for the correctness and completeness of the particulars and statements which he inserts in the air waybill or which Carrier inserts on his behalf. The shipper shall be liable for all of the irregularity, incorrectness or incompleteness of said particulars or statements, whether the air waybill was made out by or on behalf of the shipper or by Carrier (or completed by Carrier) on behalf of the shipper pursuant to Paragraph (C) above. In the case of consignments to be forwarded C.O.D., it shall be the sole responsibility of the shipper to enter the amount of the C.O. D. on the air waybill, and Carrier shall not be liable for failure to collect the C. O.D. amount when not so entered by the shipper.”
In essence, Eighth Air Depot sued for the breach of a contract of carriage by air for failure to turn over the C.O.D. funds. “Anno., Liability of Carrier for delivering goods sent C.O.D. without receiving cash payment,” 27 A.L.R.2d 1320 (1969). The air waybill is typically the contract of carriage:
“ * * * The carrier-shipper relationship is evidenced by an air waybill.”
69 Yale Law Review 993; 10 Williston § 1078, pp. 80-83. The air waybill specifies that it is subject to the tariff provisions filed with and approved by the C.A.B.
Therefore, to recover for breach of contract of carriage, a contract between the plaintiff-shipper and the defendant-carrier must exist. Here, either there was no such contract, or, under the terms of the contract, which must include the tariff provisions, the shipper must bear the risk of the erroneously completed written contract (in the absence of certain conditions not here alleged.)
Affirmed.

. The Federal Aviation Act, 49 U.S.C. § 1301 et seq., governs air transportation in interstate, and to some degree intrastate, commerce. The Act stated that the Civil Aeronautics Board shall perform “ * * * their powers and duties * * consistently with any obligation assumed by the United States in any treaty, convention, or agreement that may be in force between tire United States and any foreign country * * *.” 49 U.S.C. § 1502, but see Amendment 49 U.S.C. §§ 1655-1657. The Warsaw Convention (1929) 49 Stat. 3000 (ratified 1934), and the amendatory Hague Protocol of 1955, 2 International Civil Aviation Organization, International Conference on Private Air Law 1. (Doc. 7686-LC/140, 1956), S.Exee.Doc.No. H, 86 Cong-., 1st Sess. 5 (1958), (not ratified by tbe U.S.) are such treaties which may supercede those provisions contained in tariffs filed with the C.A.B. See 10 Williston, Contracts (3rd Edition 1967) § 1080C, pp. 123 et seq. The parties have not argued the applicability of these matters, and therefore there is no need to consider them here, but in the interest of clarity we point out the existence of further potential issues in such litigation. See: “Note: Transporting Goods by Air,” 69 Yale Law Review 993 (1960).