HIGHLANDS INSURANCE COMPANY, Plaintiff-Appellant,

v.

TRINIDAD AND TOBAGO (BWIA INTERNATIONAL) AIRWAYS CORPORATION, Defendant-Appellee.

No. 82–6033.

United States Court of Appeals, Eleventh Circuit.

Aug. 15, 1984.

Hayden & Milliken, John D. Kallen, William Boeringer, Miami, Fla., for Highlands.

Lawrence Mentz, Stephen J. Fearon, Wendy A. Grossman, Condon & Forsyth, New York City, for defendant-appellee.

Before TJOFLAT and CLARK, Circuit Judges, and GOLDBERG ⁎, Senior Circuit Judge.

### PER CURIAM:

■ Plaintiff Highlands brought this subrogation action against BWIA, an air carrier, claiming money damages for destruction of cargo.[1] Highlands presented three theories of recovery: bailment, negligence, and breach of a contract of carriage. BWIA answered, asserting various defenses, including the defense that Highlands' claim was barred because its subrogor, Mr. Bajnath Ramgoolam, failed to meet the timely notice requirements contained in Article 26 of the Warsaw Convention, as set out in 49 U.S.C. § 1502 note (1976).[2] The court subsequently granted BWIA summary judgment on the basis of that defense. Highlands appeals, contending that material issues of fact remained in dispute. We reject this contention and affirm.

---

⁎ Honorable Irving L. Goldberg, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Highlands sued BWIA in Florida state court. BWIA removed the case to the United States District Court for the Southern District of Florida under 28 U.S.C. § 1441(d) because it is a "foreign state" within the meaning of 28 U.S.C. § 1603(a), owned by the government of Trinidad and Tobago.

2. The Warsaw Convention, officially denominated "Convention for Unification of Certain Rules Relating to International Transportation by Air," governs the liability of air carriers in international air travel. This multinational treaty was concluded in Warsaw on October 12, 1929, and was adopted by the United States in 1934. The Warsaw Convention preempts local law in areas where it applies. *See Burnett v. Trans World Airlines, Inc.,* 368 F.Supp. 1152, 1155 (D.N.M.1973). No party argues that this case involves an area to which the convention does not apply.

This case involves international air cargo transportation from Florida to Trinidad. Both the United States and Trinidad are contracting parties to the Warsaw Convention, and pursuant to art. 1(2) of the Convention, 49 Stat. 3014, the Convention exclusively governs the parties' rights in this case.

## I.

### A. *The Facts*

On March 4, 1980, Ramgoolam received a shipment of "fly back transformers" and "twist locks," which are television parts, transported by BWIA from Miami, Florida, to Port-of-Spain, Trinidad. Ramgoolam came to BWIA's warehouse, where, according to his summary judgment affidavit, he saw employees throwing his goods from a storage rack to the floor approximately 18 feet below. Assuming there was damage to his goods, he discussed the problem with a BWIA employee at the warehouse but left with a clean delivery receipt. Ramgoolam then drove to a BWIA office in downtown Port-of-Spain, where a BWIA employee informed him that no one at that office could make a notation of the damage on the delivery receipt[3] as they had not seen the goods. Ramgoolam says in his affidavit that the employee at the downtown office told him that the only notation that could be made on the delivery receipt was "lift inoperative," indicating that the goods could not be moved by mechanical means to the floor and had to be brought down some other way. The employee apparently could make such a notation because he had personal knowledge that the lift was broken. Such a notation was made.

Three days after Ramgoolam received the goods, he hired a firm of cargo survey-

> The provision at issue here, article 26, states:
> (1) Receipt by the person entitled to the delivery of baggage or goods without complaint shall be *prima facie* evidence that the same have been delivered in good condition and in accordance with the document of transportation.
> (2) In case of damage, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and at the latest, within 3 days from the date of receipt in the case of baggage and 7 days from the date of receipt in the case of goods. In case of delay the complaint must be made at the latest within 14 days from the date on which the baggage or goods have been placed at his disposal.
> (3) Every complaint must be made in writing upon the document of transportation or by separate notice in writing dispatched within the times aforesaid.
> (4) Failing complaint within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on his part.

**3.** A notation of damage to the goods on the delivery receipt would have fulfilled the requirements of article 26(3), *supra* note 2.

ors to conduct an examination of the goods; their survey showed that the entire shipment was severely damaged. Ramgoolam gave BWIA notice of the survey but BWIA did not attend. On March 20, BWIA received an undated letter from Ramgoolam giving notice of his claim. BWIA apparently rejected the claim without stating its reasons. Highlands paid Ramgoolam for its loss and brought this subrogation action.

### B. *Notice Requirements Under the Warsaw Convention*

The Warsaw Convention recognizes that air cargo may be lost, destroyed, or damaged,[1] but requires an express notice only for damaged goods. The Convention explicitly states that there is no notice requirement for lost goods;[5] it is silent, however, as to a notice requirement for totally destroyed goods. *See Maschinenfabrik Kern, A.G. v. Northwest Airlines, Inc.*, 562 F.Supp. 232, 237 (N.D.Ill.1983); *Hughes-Gibb & Co., v. Flying Tiger Line, Inc.*, 504 F.Supp. 1239, 1242 (N.D.Ill.1981).

█ The notice requirement for damaged goods, found in article 26(2), requires written notice within seven days.[6] Failure to comply with this provision defeats an otherwise valid damage claim; an absence of a timely complaint is *prima facie* evidence of delivery in good condition.

**4.** Article 18(1) states:
> The carrier shall be liable for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air.

**5.** Article 13(3) provides:
> If the carrier admits the loss of the goods, or if the goods have not arrived at the expiration of seven days after the date on which they ought to have arrived, the consignee shall be entitled to put into force against the carrier the rights which flow from the contract of transportation.

**6.** *See supra* note 2. In Hague Protocol jurisdictions the notice requirement for goods is 14 days. *See Stud v. Trans International Airlines*, 727 F.2d 880 (9th Cir.1984); *see also* E. Scoles & P. Hay, Conflict of Laws (1983). In this appeal we deal only with goods. Different requirements exist as to baggage.

## II.

### Material Issues of Fact Allegedly Remaining in Dispute

■ Highlands asserts that the "destroyed goods" exception to article 26 applies, so that Ramgoolam was under no duty to give BWIA notice. This exception to the notice requirement was first addressed in a former Fifth Circuit [7] case, *Dalton v. Delta Airlines, Inc.*, 570 F.2d 1244 (5th Cir.1978). *Dalton* involved greyhounds which were shipped alive on Delta from Ireland to Miami but arrived dead. When Delta unloaded the dog containers, a Delta agent saw the dog carcasses and reported to the owner that they were dead. The owner failed to give Delta notice within seven days, as required by article 26, and the district court entered summary judgment for Delta.

*Dalton* held that the dogs were clearly destroyed, but the Convention's notice requirements contained a gap; no notice was required for destroyed goods. Destroyed goods, according to *Dalton*, were more similar to lost goods than damaged goods, because both destroyed and lost goods were without utility and a carrier would usually be on actual notice of loss or destruction. Accordingly, *Dalton* held that like lost goods—for which there is an explicit no-notice provision [8]—no notice was required under article 26 for destroyed goods. *Id.* at 1246–47. In so holding, the *Dalton* court noted that the greyhounds were openly and obviously dead, Delta had clear actual notice, and Delta certainly knew the changed nature of the shipped goods, which rendered them utterly useless. In such a situation, "[n]otice is not needed since notice would serve no useful purpose to the carrier." *Id.* at 1247.

The *Dalton* rationale has been applied only to cases involving the delivery dead of animals shipped live. *See, e.g., Hughes-Gibb & Co. v. Flying Tiger Line, Inc.*, 504 F.Supp. 1239 (N.D.Ill.1981) (breeding swine, no notice needed for those arriving dead but notice needed for those dying shortly after delivery); *see also American Breeders Serv. v. KLM Royal Dutch Airlines*, 17 Av.Cas. (CCH) 17,103 (N.Y.Sup. Ct.1982). In a recent case in the Eastern District of New York the court declined to apply *Dalton* where a sealed shipping container was ripped open, ransacked, and most of its contents stolen. *Denby v. Seaboard World Airlines, Inc.*, 575 F.Supp. 1134 (E.D.N.Y.1983).

If *Dalton* applies at all beyond animal cases, it controls only situations where the destruction is both total and obvious. *Cf. Dalton*, 570 F.2d at 1247 (dicta: demijohn of rare brandy falling 15 feet onto airport tarmac). *Dalton* is clearly inapposite to the instant case. The twist locks and transformers were securely packed in crates. BWIA was not on actual notice of their destruction. The district court correctly determined that there was no genuine issue of material fact on this point. Accordingly, Highlands' claim is barred by the failure of its subrogor to give proper article 26 notice.

■ Highlands also argues that the BWIA's willful misconduct deprives it of the protections of article 26.[9] Highlands relies on article 25, which provides "[t]he carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his willful misconduct...." However, article 25 does not deprive the carrier of the article 26 notice protections. Minutes of the negotiations on the Hague Protocol, an amendment to the Convention, indicate that the delegates understood article 25 as referring only to article 22, which establishes monetary limits for recoveries under the Convention. 1 International Conference on Private Air Law, Minutes at 166, ICAO Doc. 7686–LC/140 (1955).[10]

---

7. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.

8. *See supra* note 5.

9. Highlands claims that BWIA's employees engaged in willful misconduct by throwing the crates onto the warehouse floor and disregarding Ramgoolam's requests to stop.

10. The Congress has not adopted the Hague Protocol, *see Stud*, 727 F.2d at 881–82, but we accord weight to the delegate's interpretations.

**540**

Case law also supports this interpretation of article 25. The former Fifth Circuit has noted that, "[i]n Warsaw Convention cases, limitation periods imposed by the Convention or by contract have not been held to be provisions limiting or excluding liability." [11] *Butler's Shoe Corp. v. Pan American World Airways, Inc.*, 514 F.2d 1283, 1285 (5th Cir.1975). Similarly, the Tenth Circuit has held that an allegation of willful misconduct does not prevent a grant of summary judgment when the statute of limitations, article 29, has expired. *Stone v. Mexicana Airlines, Inc.*, 610 F.2d 699 (10th Cir.1979). Because article 25 does not affect a carrier's rights to notice under article 26, there is no genuine issue of material fact regarding BWIA's alleged willful misconduct.

■ Plaintiff further argues that the notation of "lift inoperative" on the delivery receipt was a sufficient written complaint within the meaning of article 26. One purpose of requiring written notice is to inform the carrier adequately of the nature of the damages claimed. *See Georgia, Florida & Alabama Railway Co. v. Blish Milling Co.*, 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948 (1916). As a matter of law "lift inoperative" does not provide adequate written notice that the goods were damaged.

■ Plaintiff additionally asserts that defendant's conduct constituted either an estoppel or a waiver. To have an estoppel one must show "(1) words, acts, conduct, or acquiescence causing another to believe in the existence of a certain state of things; (2) willfulness or negligence with regard to the acts, conduct, or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated." *Matter of Garfinkle*, 672 F.2d 1340, 1347 (11th Cir.1982). Highlands had the burden of proving all elements of estoppel. *Tom W. Carpenter Equipment Co. v. General Electric Credit Corp.*, 417 F.2d 988, 990 (10th Cir.1969). Highlands failed to show that BWIA's actions caused Ramgoolam to delay processing his claim. The district court correctly concluded there was no genuine issue of material fact on this point.

The facts also do not establish a waiver. "Waiver requires (1) the existence at the time of the waiver [of] a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage, or benefit." *Garfinkle*, 672 F.2d at 1347. Nothing in the record indicates an intention by BWIA to waive its right to notice. As a matter of law there was no waiver.

Because the record presented no genuine issues of material fact, the district court correctly granted summary judgment.

AFFIRMED.

---

11. The *Butler* court was analyzing article 23, not article 25, of the Convention. Article 23 provides "[a]ny provision tending to relieve the carrier of liability or to fix a lower limit than

that which is laid down in this convention shall be null and void...." While this language varies somewhat from the language of article 25, their intended effect is essentially the same.