The **ST. PAUL INSURANCE CO. OF ILLINOIS**, as Subrogee of First Wisconsin Corp., Plaintiff-Appellant,

v.

**VENEZUELAN INTERNATIONAL AIRWAYS, INC., a/k/a Viasa Airlines, Defendant-Appellee.**

No. 85–6048.

United States Court of Appeals, Eleventh Circuit.

Jan. 20, 1987.

William R. Boeringer, Hayden & Milliken, P.A., Miami, Fla., Stephen C. Veltman, Tribler & Marwedel, P.C., Wendy J. Muchman, Warren J. Marwedel, Dion J. Sartorio, Chicago, Ill., for plaintiff-appellant.

John W. Thornton, Thonton, Herndon, Mastrucci & Ferrington, Michael E. Wargo, Miami, Fla., for Venezuelan Intern. Airways, Inc.

Before FAY and JOHNSON, Circuit Judges, and HOFFMAN,* Senior District Judge.

WALTER E. HOFFMAN, Senior District Judge:

The plaintiff, St. Paul Insurance Co. of Illinois (St. Paul), appeals from a grant of summary judgment in favor of the defendant, Venezuelan International Airways, Inc. (Viasa), on its claim for lost goods.[1] The district court held that the tariff which Viasa had filed with the Civil Aeronautics Board, in compliance with the Federal Aviation Program, 49 U.S.C. § 1373(a), controlled the time for notice of claim and that the notice requirements of Viasa's air waybills did not control. The district court stated that St. Paul's notice of shortage or pilferage was untimely as a matter of law and that St. Paul's claim against Viasa was barred. In determining which document set forth the controlling notice provision, the district court found it unnecessary to decide whether a shortage or pilferage of goods constitutes a loss, a partial loss, damage, or non-delivery of goods.

We AFFIRM the holding of the district court.

## BACKGROUND

### Facts

The pertinent facts of this case are undisputed. The controversy focuses on the central issue of which notice provision is applicable. St. Paul's authorized agent gave written notice of the shortage of goods to Viasa on July 21, 1983. That date is respectively 67 and 77 days subsequent to the issuance of the two air waybills in question. July 21, 1983, is also 52 days subsequent to May 31, 1983, and 49 days after June 3, 1983; the latter two dates are arrival dates for the shipments and could presumably be set as the dates upon which

the agents of St. Paul became aware of the shortages. Each of the time spans here calculated clearly exceeds any 7–, 14– or 30–day notice requirement but falls securely within a 120–day notice requirement.

This action arises out of the alleged pilferage or shortage of spare tractor parts sent in two separate shipments from Caracas, Venezuela, to Miami, Florida. The First Wisconsin Corporation held an ownership interest in the cargo and acted through various agents as shipper of the cargo and arranged for transportation of the cargo. St. Paul is subrogated to the rights of recovery of First Wisconsin Corporation by virtue of payments made in accordance with an insurance policy which bound the entities. The first shipment, sent pursuant to Viasa Air Waybill No. 164–11648615, dated May 16, 1983, consisted of 18,458 pounds of tractor parts in 79 boxes on two pallets. On June 3, 1983, the first shipment arrived in Miami. Inter-American Moving Services delivered the goods to Transamerican Transcontinental (Transamerican), a tractor parts distributor acting as agent for the plaintiff-appellant. The agent inspected the goods and found a shortage of 6,521.47 pounds of tractor parts.

The second shipment consisted of 145 boxes on three pallets, which weighed 15,-457.20 pounds. This shipment was sent pursuant to Viasa Air Waybill No. 164–11648486, dated May 26, 1983, and arrived in Miami on May 31, 1983. A different trucker, Equipsa, Inc., delivered the goods to Transamerican on June 10, 1983. Approximately 1,790.30 pounds of tractor parts were missing from this shipment. Transamerican gave written notice of the shortages to Viasa on July 21, 1983.

### Notice Requirements

Several sources of written notice of claim provisions are applicable to international

---

* Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

1. The initial complaint named three defendants: Viasa, Inter-American Moving Services, Inc.,

and Equipsa, Inc. The district court granted summary judgment in favor of Viasa and in an order dated March 19, 1986, dismissed Inter-American Moving Services, Inc. and Equipsa, Inc. without prejudice.

air transportation. We must decide which notice requirement governs the length of time available to St. Paul in which to give timely notice of its claim to Viasa regarding the shortage or pilferage of portions of each of two shipments.

The first notice requirements appear in the Convention for the Unification of Certain Rules Relating to International Transportation by Air (Warsaw, October 12, 1929; adhered to by the United States June 27, 1934), 49 Stat. 3000, 49 U.S.C. § 1502 (Warsaw Convention). Article 13(3) of the Warsaw Convention provides for lost goods as follows:

> ... (3) if the carrier admits the loss of goods, or if the goods have not arrived at the expiration of seven days after the date on which they ought to have arrived, the consignee shall be entitled to put into force against the carrier the rights which flow from the contract of transportation.

The reference to the contract of carriage in Article 13(3) means that if this Article applies, the terms of the Viasa air waybill are relevant. A copy of Air Waybill No. 164–11648486, marked Exhibit I, appears in the Record.[2] Paragraph 12 of that waybill sets forth additional notice provisions and states in full:

> (12)(a) the person entitled to delivery must make a complaint to the Carrier in writing in the case of (i) visible damage to the goods, immediately after discovery of the damage and at the latest within 14 days from receipt of the goods, (ii) of other damage to the goods, within 14 days from the date of receipt of the goods, (iii) of delay, within 21 days of the date the goods are placed at his disposal, and (iv) of non-delivery of the goods, within 120 days from the date of the issue of the Air Waybill;

Read together, Article 13(3) and the Viasa Air Waybill clearly indicate that notice of non-delivery of goods must be given to the carrier within 120 days of the date of issue of the air waybill.

A second article of the Warsaw Convention also governs certain notice provisions regarding claims. Article 26 states:

> (1) Receipt by the person entitled to delivery of baggage or goods without complaint shall be *prima facie* evidence that the same had been delivered in good condition and in accordance with the document of transportation.
>
> (2) In the case of damages, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and at the latest, within 3 days from the date of receipt in the case of baggage and 7 days from the date of receipt in the case of goods. In case of delay the complaint must be made at the latest within 14 days from the date on which the baggage or goods have been placed at his disposal.
>
> (3) Every complaint must be made in writing upon the document of transportation or by separate notice in writing dispatched within the time aforesaid.
>
> (4) Failing complaint within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on his part.[3]

Article 26 clearly applies to damaged goods. If a shipment, short from pilferage or other reason, is construed to be damaged, Article 26, and not Article 13(3) of the Warsaw Convention must apply.

In addition to the notice provisions of the Warsaw Convention and the air waybills, on the dates in question Viasa had filed certain tariffs with the Civil Aeronautics Board. Viasa tariff Rule 23(b) and Exception (6) also provide for notice, as follows:

> *Rule No. 23: Time Limitations on Claims and Actions,*
>
> (A) Receipt by the person entitled to the delivery of the cargo without complaint

---

**2.** A copy of Viasa Air Waybill No. 164–116484615 also appears in the appellant's record excerpts; however, only the front side has been copied, excluding the conditions of contract. Since the air waybills are printed forms the front sides of which are identical, this panel assumes that the conditions of contract on both air waybills are identical.

**3.** The complaint contains no allegation of fraud.

is prima facie evidence that the same has been delivered in good condition and in accordance with the contract of carriage. (B) No action shall be maintained in the case of damage to or partial loss of cargo unless a written notice, sufficiently describing the cargo concerned, the approximate date of the damage, and the details of the claim is presented to an office of Carrier within 7 days from the date of receipt thereof, in the case of delay, unless presented within 14 days from the date the cargo is placed at the disposal of the person entitled to delivery of the consignment, and in the case of loss (including non-delivery) unless presented within 120 days from the date of issue of the air waybill.

*Exception 6:* (applicable only to VA)[4] No action shall be maintained in the case of loss (including NON–DELIVERY) unless presented within 30 days from the date of issuance of the air waybill.

Neither the tariff nor the exception is specifically incorporated into the air waybill; however, the air waybill states that to the extent that a tariff is not in conflict with the Warsaw Convention, the air waybill is subject to that tariff.

## DISCUSSION

### Applicable Notice Provision

██ The district court has ruled and the parties agree that the Warsaw Convention governs the rights and liabilities to this action. *Highlands Insurance Company v. Trinidad and Tobago (BWIA International) Airways Corporation,* 739 F.2d 536 (11th Cir.1984). The Warsaw Convention creates the cause of action upon which St. Paul relies and is the exclusive remedy against international air carriers for lost or destroyed cargo. Warsaw Convention Arts. 18, 21, 24, 24(2), 28(2), 49 U.S.C. § 1502 note; *Boehringer-Mannheim Diagnostics, Inc. f/k/a Hycel, Inc. v. Pan*

*American World Airways, Inc.,* 737 F.2d 456, 458 (5th Cir.1984), *cert. denied,* 469 U.S. 1186, 105 S.Ct. 951, 83 L.Ed.2d 959 (1985). The Warsaw Convention, an international treaty accepted by the United States, is absolutely binding upon the parties. *Dalton v. Delta Airlines, Inc.,* 570 F.2d 1244, 1246 (5th Cir.1978).

The function of this court is to construe the Convention, determine its meaning, and to apply it fairly. *Dalton,* 570 F.2d at 1246; *Kelley v. Societe Anonyme Belge D'Exploitation de la Navigation Aerienne,* 242 F.Supp. 129, 136 (E.D.N.Y.1965). The predecessor to this court has previously set forth rules for construing treaties. *Board of County Comm'rs. v. Aerolineas Peruanasa, S.A.,* 307 F.2d 802, 806–07 (5th Cir.1962), *cert. denied sub nom. Aerovias Interamericanas DePanama v. Board of County Commissioners, Dade County, Florida,* 371 U.S. 961, 83 S.Ct. 543, 9 L.Ed.2d 510 (1963).

> [I]n construing a treaty, as other contracts, we give consideration to the intent of the parties so as to carry out their manifest purpose.... We proceed also under the admonition that where a treaty admits of two constructions, one restrictive of and the other favorable to the rights claimed under it, the latter is to be preferred.

St. Paul's claim is for loss of goods, not for damaged goods.[5] The controlling provision of the Warsaw Convention is Article 13(3) which states:

> If the carrier admits the loss of the goods, or if the goods have not arrived at the expiration of seven days after the date in which they ought to have arrived, the consignee shall be entitled to put into force against the carrier the rights which flow from the contract of transportation.

In construing Article 13(3) in conjunction with SECTION III. AIR WAYBILL, Arti-

---

**4.** The tables on pages six and eight of the tariff indicate that "VA" is the abbreviation for Viasa. *See Bella Boutique Corporation v. Venezolana Internacional De Aviacion, S.A., (VIASA AIRLINES),* 459 So.2d 440 (Fla. 3rd Dist.Ct.App. 1984).

**5.** *See infra,* p. 1549, for the Court's discussion of the distinction between lost and damaged goods.

cle 5(1) and (2), this court determines that on first blush the "rights which flow from the contract of transportation" appear to be those rights set forth in the air waybills in question.[6] In the "Conditions of Contract," Paragraph 12 of the air waybill sets forth the following provisions:

(12)(a) the person entitled to delivery must make a complaint to the carrier in writing in the case (i) of visible damage to the goods, immediately after discovery of the damage and at the latest within 14 days from receipt of the goods, (ii) of other damage to the goods, within 14 days from receipt of the goods, (iii) of delay, within 21 days of the date the goods are placed at his disposal, and (iv) of non-delivery of the goods, within 120 days from the date of the issue of the Air Waybill.

The interaction between Article 13(3) and the air waybill clearly appears to give the shipper 120 days in which to assert a claim for non-delivered goods.

The notice provision is further complicated by the existence of tariffs filed in accordance with the Federal Aviation Program, 49 U.S.C. § 1373. On the dates of issuance of the air waybills involved in this case, Viasa had on file and in full force and effect certain cargo rules, tariff No. CR-3, C.A.B. No. 48.[7] This tariff required written notice of claim as a condition precedent to maintaining an action. In the case of loss, including non-delivery, the tariff, as applied to Viasa, required notice within 30 days from the date of issuance of the air waybill; in the case of damage or partial loss, notice was required within seven days of receipt of the goods.

We must now resolve the obvious conflict between the provisions of the air waybills and the provisions of the tariff, filed in accordance with 49 U.S.C. § 1373. Article 33 of the Warsaw Convention states:

Nothing contained in this convention shall prevent the carrier either from refusing to enter into any contract of transportation or from making regulations which do not conflict with the provisions of this convention.

Viasa relies on Article 33 in conjunction with *Butler's Shoe Corp. v. Pan American World Airways, Inc.*, 514 F.2d 1283 (5th Cir.1975), to support its argument that the notice provisions of its tariff should control as the tariff regulates matters not covered by the Convention. Article 13(3) itself does not set forth a notice provision; however, that Article does specifically provide that a shipper's rights flow directly from the contract of carriage. Consequently, the notice provisions under consideration do not conflict with any such requirements set forth in the Convention itself. The conflict arises because the notice provisions in the tariff conflict with those set forth in the air waybill. The essential question which we must decide is whether the air waybill, as an entity unto itself, is the contract of carriage envisioned by the drafters of the Warsaw Convention, or whether the contract of carriage is composed of the air waybill plus all validly filed tariffs. We believe that the Convention drafters intended to create a treaty which would ensure uniform treatment to its signatories. Further we interpret the language of the Convention to mean that the contract of carriage is whatever the courts of the signatory country have construed such a contract to be. Courts in this country have held that a validly filed tariff is incorporated into the air waybill and that together they become the contract of carriage. *Tishman & Lipp, Inc. v. Delta Air Lines*, 413 F.2d 1401, 1403 (2d Cir.1969); *Lichten v. Eastern Air Lines*, 189 F.2d 939 (2d Cir.1951); *Blair v. Delta Air Lines*, 344 F.Supp. 360 (S.D.Fla.1972), *aff'd*, 477

---

**6.** An air waybill describing the goods shipped constitutes prima facie evidence of the contract to carry. Note, *Transporting Goods by Air,* 69 Yale L.J. 993, 997 (1960). *See also 13 Am.Jur.2d Carriers* § 277 (1964). One of three functions of a bill of lading (or air waybill) is to serve as the contract for the carriage of goods.

**7.** Rule 23 and Exception 6 of this tariff are quoted in full at p. 5. Tariffs of this nature are filed by several carriers, acting jointly. This fact accounts for Exception 6, which applies only to Viasa.

F.2d 564 (5th Cir.1973); *Hycel, Inc. v. American Airlines, Inc.*, 328 F.Supp. 190, 193 (S.D.Tex.1971). Therefore, we hold that the contract of carriage between Viasa and St. Paul consists of both the air waybill and the tariff.

Furthermore, we acknowledge the power of validly filed tariffs. Such a tariff has the force and effect of a statute and binds both the carrier and the shipper with the force of law. *Lowden v. Simonds-Shields-Lonsdale Grain Co.*, 306 U.S. 516, 59 S.Ct. 612, 83 L.Ed. 953 (1939); *Southern Pacific Co. v. Brown, Alcantar & Brown, Inc.*, 409 F.2d 1331 (5th Cir.1969). We recognize the persuasive though not binding authority of *Bella Boutique Corporation v. Venezolana Internacional De Aviacion, S.A. (Viasa Airlines)*, 459 So.2d 440, 443 (Fla. 3rd Dist.Ct.App.1984), obviously involving the same carrier as in this case. *Bella Boutique* states that a validly filed tariff constitutes the contract of carriage between the parties and conclusively and exclusively governs the rights and liabilities between the parties. However, the facts in *Bella Boutique* are distinguishable from those in the case *sub judice*. The shipper, Bella Boutique, notified Viasa by telephone about the non-delivery of cargo three weeks after the air waybill was issued, but written notice did not follow until some seven months thereafter. As a consequence, the shipper met neither a 30-day nor a 120-day requirement for written notice, unlike St. Paul.

The court in *Bella Boutique* considered the same tariff, Rule No. 23(B) and Exception 6, that is involved in the present case. The court held that any reasonable ambiguity in a tariff should be construed against the carrier. The panel went on to say that resolution of doubt against the carrier must be founded upon a substantial basis. *Bella Boutique*, 459 So.2d at 442. The court then upheld a summary judgment in favor of Viasa because the shipper had failed to comply with the notice requirements reflected in the contract of carriage, which was specifically made subject to the terms of the tariff. *Bella Boutique*, 459 So.2d at 443, n. 4. The notice require-

ments in both sources were identical. Viasa argues that any inconsistency between a tariff and a contract of carriage must be resolved in favor of the tariff. *Northwest Airlines, Inc. v. United States*, 444 F.2d 1097, 195 Ct.Cl. 356 (1971); *Slick Airways, Inc. v. United States*, 292 F.2d 515, 154 Ct.Cl. 417 (1961); *Bella Boutique*, 459 So.2d at 443, n. 4. But for the clear precedent that the tariff's provisions supersede the terms specifically set forth in the air waybill, we would be inclined to hold that the carrier should not be allowed to present to the shipper for signature an air waybill which contains a 120-day notice provision for non-delivered goods and then to hold the shipper to a 30-day provision contained in a tariff which the shipper most likely has not seen. The practice seems fundamentally unfair. However, another court has held that it is legally immaterial whether the shipper was personally ignorant of a rule when he had made no inquiry about it. *Alco-Gravure Division of Publications Corporation v. American Airlines, Inc.*, 173 F.Supp. 752, 757 (D.Maryland 1959). Without knowledge of the extent of the shipper's inquiry, we can only assume the shipper's ignorance of the tariff. Why else would a shipper agree to a contract with contradictory notice provisions? Nonetheless, given the clear statements of other courts, we hold that the notice provisions of the tariff prevail in this case.

Other courts have considered conflicts between tariff provisions and the tenets of the Warsaw Convention. In a footnote, a Florida court noted that the Warsaw Convention and the Hague Protocol of 1955 are treaties which may supersede those provisions contained in tariffs filed with the Civil Aeronautics Board. *Eighth Air Depot, Inc. v. Pan American World Airways, Inc.*, 254 So.2d 564, n. 1 (Fla. 3rd Dist.Ct.App.1971). This court's position is dicta and not binding upon this panel as the court clearly states that the parties did not argue the applicability of the facts. *Eighth Air Depot* also refers to 10 Williston, *Contracts*, § 1080C (3rd Edition 1967), which takes the position that the

provisions of the Warsaw Convention "supersede those contained in tariffs filed with the Board pursuant to the Federal Aviation Act." A New York court compared the treaty with a tariff and concluded: "However, this was an international flight, and is covered by the Warsaw Convention ..., which supersedes the tariff (*Stolk v. Compagnie Nationale Air France*, 58 Misc.2d 1008, 299 N.Y.S.2d 58). A conflict between a tariff which limits an airline's liability and the Warsaw Convention must be resolved in favor of the latter, since this is a treaty duly entered into and is the supreme law of the land." *McMurry v. Capitol International Airways*, 102 Misc.2d 720, 424 N.Y.S.2d 88 (N.Y.Civ.Ct.1980). Another New York court found that the rule of an airline tariff which purported to deny responsibility for loss of money relieved the airline of liability beyond the extentpermissible by the Warsaw Convention and thus was unenforceable. *Schedlmayer v. Trans International Airlines*, 99 Misc.2d 478, 416 N.Y.S.2d 461 (N.Y.Civ.Ct.1979).

The preceding state court opinions are merely persuasive and not binding authority. Additionally, even though we feel concern for the shipper's plight, in order to find a conflict between Viasa's tariff and the Warsaw Convention, we would initially have to hold that pursuant to Article 13(3) the contract of carriage consists solely of the air waybill without regard to the tariff. We cannot interpret the Convention in that way. Further we do not find that Viasa's tariff, which requires notice of non-delivered goods within 30 days of the issuance of the air waybill, is an attempt to limit or exclude liability. In Warsaw Convention cases, limitations periods, whether imposed by the treaty itself or by contract, have not been held to be provisions limiting or excluding liability. *Butler's Shoe Corporation v. Pan American World Airways, Inc.*, 514 F.2d 1283, 1285 (5th Cir.1975); *Molitch v. Irish International Airlines*, 436 F.2d 42 (2d Cir.1970); *Crosby & Co. v. Compagnie Nationale Air France*, 76 Misc.2d 990, 352 N.Y.S.2d 75 (Sup.Ct.), *aff'd* 42 A.D.2d 1050, 348 N.Y.S.2d 957 (Sup.Ct.App.Div.1973). Therefore, the no-

tice provision in Viasa's tariff controls. Consequently, St. Paul has failed to give timely notice of its loss.

**Damage or Loss**

■ We now turn our attention to the distinction between damaged goods and lost goods. In many cases brought under the Warsaw Convention, this distinction may be critical when the Convention itself, the air waybills, and the tariffs provide variously for different categories of goods upon which a shipper may wish to state a claim. Having decided that Viasa's tariff does not in this particular case contradict the Warsaw Convention, we are not called upon to draw a distinction between lost and damaged goods, and we do not reach that issue. However, if we were to do so, we would rely heavily on the sound and articulate reasoning of Judge Friendly in *Denby v. Seaboard World Airlines, Inc.*, 737 F.2d 172, 186 (2d Cir.1984).

> There is no reason to read "loss" in such an air waybill as meaning only total loss; rather it does much less violence to the language to say that "loss" means all kinds of loss and that damages means only physical damage. *See Famolare, Inc. v. Seaboard World Airlines*, 15 Av. Cas. (CCH) 17,287 (N.Y.Sup.Ct.1978) (120 day period applies to loss of fifty-three out of 1696 shipped cartons); *Schwimmer v. Air France*, 87 Misc.2d 147, 384 N.Y.S.2d 658 (Civ.Ct.Bronx 1976) (120 day period applies to loss of seven out of eleven cases). If this is less favorable to the carrier than the Convention as construed in *Fothergill*, the carrier has made its own bed.

We commend Judge Friendly's opinion to any court which must consider a distinction between damaged goods and lost goods.

**CONCLUSION**

For all of the foregoing reasons, the opinion of the district court is AFFIRMED.