Patrick NWACHUKWU, Plaintiff,

v.

**KLM ROYAL DUTCH AIRLINES and
NORTHWEST AIRLINES
Defendants.**

No. 00–73856.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 10, 2001.

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BORMAN, District Judge.

Now before the Court is Defendants' Motion for Summary Judgment. The Court heard arguments on this motion on August 8, 2001. Having considered all of the arguments of the parties, the Court GRANTS Defendants' motion.

### FACTS [1]

Plaintiff Patrick Nwachukwu (Plaintiff or Nwachukwu) purchased a plane ticket from Defendants Northwest Airlines (NWA) and KLM Royal Dutch Airlines (KLM) to travel from Detroit to Lagos, Nigeria, with a layover of a few hours in Amsterdam, The Netherlands. Plaintiff flew from Detroit to Amsterdam on NWA, and from Amsterdam to Lagos, Nigeria, on KLM. Plaintiff's flight was scheduled to leave Detroit for Amsterdam on April 11, 1999. He arrived at Detroit Metro Wayne County Airport and checked two pieces of luggage at the ticket counter. He then proceeded to the NWA gate in order to board the plane, carrying with him three pieces of carry-on luggage: a small bag which held his shaving kit and other personal toiletries, a round "hat bag," and a soft sided case with wheels and a handle which contained a "locked" compartment.

After Plaintiff had entered the jetway, but before he actually boarded the plane, Plaintiff and another passenger were approached by United States Customs agents who stated that they wanted to check the amount of cash Plaintiff and the other passenger were carrying. Plaintiff stated that he was carrying $10,200 [2] in cash, and the customs officials asked Plaintiff to show it to them. Plaintiff unzipped his case, opened the locked compartment and removed three envelopes containing the money and showed them to the officials. During this time, NWA flight attendants were in a position to watch the search.

Apparently the customs officials searched Plaintiff's person, including his shoes, and removed items from his luggage while they were standing in the jetway. After they concluded the search, the Customs agents returned the money to Plaintiff and had him sign a form of some sort. At this point, NWA was anxious to take off and requested that Plaintiff be allowed to board the plane. The Customs officials and two NWA employees aided Plaintiff in replacing his belongings, including the money, in his carry-on luggage. One of the NWA employees transported Plaintiff's case with wheels and a handle onto the plane and placed it in the cabin cubicle where the flight attendants keep their baggage. As noted before, Plaintiff was carrying two other items of carry-on baggage. Plaintiff did not receive a baggage claim for his case, which was not placed in the underbelly luggage compartment.

When Plaintiff arrived in Amsterdam, he collected his carry-on luggage and disembarked from the plane. He did not notice any damage to his case at that point. Plaintiff had a five and a half hour layover in Amsterdam. He did not check his case to make sure that the money was still present in the locked compartment.

Plaintiff then boarded the KLM flight from Amsterdam to Lagos. When he

---

1. The facts are taken from Plaintiff's Deposition, attached as Exhibit F to Defendants' Motion for Summary Judgment.

2. Plaintiff testified that $500 of the money belonged to his cousin, and that the remainder of the money belonged to him. He further stated that he intended to use his portion of the money for a business enterprise. Pl. Dep., pp. 59–61.

boarded the plane, one of the flight attendants mentioned that the case was heavy and took it from Plaintiff to store for the flight. Apparently, a flight attendant offered to assist at least one other passenger with his luggage as well. Plaintiff does not know where they took his case after they offered to help him with it. He did not receive a luggage ticket for the case.

When he arrived in Lagos, Plaintiff retrieved his case and the two pieces of luggage that he had checked in Detroit from the baggage claim area of the airport. After Plaintiff had been cleared through customs, he unzipped his case to place a newspaper in it and discovered that his case had been damaged inside by a sharp cut in the side pocket. At that point, Plaintiff left the airport and called a taxi. While he was in the taxi, he searched his case and discovered that the $10,200 was missing from the locked compartment. Additionally, two watches, a bracelet and a letter were missing from the case. Plaintiff left the taxi and presumably boarded a train to take him to eastern Nigeria.

When he arrived at his final destination in Nigeria on April 12, 1999, Plaintiff alleges he attempted to call KLM but was not able to get through. He also attempted to call his wife in Detroit, but was not able to reach her. Lastly, he tried to call his travel agent, Diplomat Tours, but was not able to reach them.

Thereafter, on May 24, 1999, Plaintiff returned to the Lagos airport to board a KLM flight back to Amsterdam, and then to board a NWA flight to Detroit. Plaintiff did not file a loss claim with KLM in Lagos or Amsterdam, nor did he file a loss claim with NWA in Amsterdam or Detroit.

Plaintiff arrived back in Detroit on May 25, 1999. Plaintiff submitted a written letter to NWA on July 19, 1999, informing them of the damage to his luggage and the money which he had lost.

Plaintiff originally filed his complaint in the Eastern District of New York on February 14, 2000. By consent of the parties, the action was transferred to the Eastern District of Michigan on October 4, 2000. Now before the Court is Defendants' motion for summary judgment.

## ANALYSIS

### I. Standard of Review

Pursuant to the Federal Rules of Civil Procedure, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed.R.Civ.P. 56(b). A summary judgment shall be entered if the moving party manifests that there is no genuine issue as to any material fact, and if the evidence presented is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed.1979)) (citations omitted). This "burden on the moving party may be discharged by . . . pointing out to the district court . . . that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making this evaluation, the court is authorized to examine any documents in a light most favorable to the non-moving party. *See Bender v. Southland*

*Corp.*, 749 F.2d 1205, 1210–11 (6th Cir. 1984).

If the burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd Cty. Bd. of Ed.*, 106 F.3d 135, 145 (6th Cir.1997). The content of the evidence must be admissible, despite the inadmissibility of its form. *Id.*

## II. Warsaw Convention

Both of the parties agree that the Convention for the Unification of Certain Rules Relating to International Travel by Air (Warsaw Convention), as amended by the Hague Protocol No. 4 applies to the instant case.[3] According to Article 1(1), the Warsaw Convention applies "to all international transportation of persons, baggage, or goods performed by aircraft for hire." The Supreme Court has held that "[t]he cardinal purpose of the Warsaw Convention ... is to 'achieve uniformity of rules governing claims arising from international air transportation.'" *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525

U.S. 155, 169, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999) (quoting *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 552, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991)). Additionally, the Supreme Court has interpreted the Warsaw Convention to preclude all state law claims. *Id.* at 161, 119 S.Ct. 662. Accordingly, the parties are correct to state that the Warsaw Convention governs Plaintiff's claims.

Although Plaintiff does not state the section of the Warsaw Convention under which he is bringing his claims, presumably he is bringing them pursuant to Article 18 which provides in relevant part:

> The carrier is liable for damage sustained in the event of the destruction or loss of, or damage to, any registered baggage, if the occurrence which caused the damage so sustained took place during carriage by air.[4]

Article 18(1). The carrier's liability is limited, however by Article 22 which provides for a limit of two hundred and fifty francs per kilogram for registered baggage (Article 22(2)(a)) and five thousand francs per passenger for "objects of which the passenger takes charge himself" (Article 22(3)). The liability limits, however, do not apply if

> it is proved that the damage resulted from an act or omission of the carrier, his servants or agents, done with intent to cause damage or recklessly and with knowledge that damage would probably result; provided that, in the case of such act or omission of a servant or agent, it is also proved that he was acting within the scope of his employment.

Article 25. Additionally, the liability limits of Article 22(2) do not apply if the carrier

---

**3.** Senate Executive Report, 105–20, August 25, 1998, Appendix 1.

**4.** Both parties agree that the loss of the money in Plaintiff's case took place during car-

riage by air. As a result, a discussion of the "carriage by air" provision is not included in this order.

does not issue a baggage check to a passenger as provided by Article 4.[5] Article 4(2).

In the case of damaged baggage, the carrier can also escape liability if a plaintiff does not provide the carrier with written notice of the damage:

1. Receipt by a person entitled to the delivery of baggage or goods without complaint shall be *prima facie* evidence that the same have been delivered in good condition and in accordance with the document of transportation.

2. In the case of damage, the person entitled to delivery must complaint to the carrier forthwith after the discovery of the damage, and, *at the latest, within seven days from the date of receipt in the case of baggage* and fourteen days from the date of receipt in the case of cargo. In the case of delay the complaint must be made at the latest within twenty-one days from the date on which the baggage or cargo have [has] been placed at his disposal.

3. Every complaint must be in writing upon the document of transportation or by separate notice in writing dispatched within the times aforesaid.

4. Failing complaint within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on his part.

Article 26 (internal citations omitted) (emphasis added).

5. Article 4(1) provides:
   In respect of the carriage of registered baggage, a baggage check shall be delivered, which, unless combined with or incorporated in a passenger ticket which complies with the provisions of Article 3, paragraph 1, shall contain:
   (a) an indication of the places of departure and destination;
   (b) if the places of departure and destination are within the territory of a single High Contracting Party, one or more

Defendants argue that Plaintiff's claims are barred because he did not comply with the notice requirements of Article 26. Plaintiff responds by arguing that as provided in Article 25, Defendants cannot claim protection under the notice requirements because they wilfully caused his injuries. Plaintiff also argues that because he did not receive a baggage claim for his baggage, Defendants cannot raise failure to give notice as a defense. Lastly, Plaintiff argues that since his ticket did not inform him of the time limitations on notice of damage, Defendants cannot avail themselves of the protections of Article 26. The Court does not find Plaintiff's arguments to be persuasive.

## II. Article 3

■ Plaintiff argues that his ticket was defective because it did not inform him that he had to report any damage to his baggage within seven days of receipt. Article 3(1) provides that:

In respect of the carriage of passengers, a ticket shall be delivered, containing:

(a) an indication of the places of departure and destination;

(b) if the places of departure and destination are within the territory of a single High Contracting Party, one or more agreed stopping places being within the territory of another State, an indication of at least one such stopping place;

agreed stopping places being within the territory of another State, an indication of at least one such stopping place;
(c) a notice to the effect that if the carriage involves an ultimate destination or stop in a country other than the country of departure, the Warsaw Convention may be applicable and that the Convention governs and in most cases limits the liability of carriers in respect of loss of or damage to baggage.

(c) a notice to the effect that, if the passenger's journey involves an ultimate destination or stop in a country other than the country of departure, the Warsaw Convention may be applicable and that the Convention governs and in most cases limits the liability of carriers for death or personal injury and in respect of loss of or damage to baggage.

Article 3(2) provides that the failure to comply with 3(1)(c) prevents the carrier from receiving the protection of the liability limitations in Article 22.

■ On its face, Article 3 does not require the carrier to inform the passenger of all of the requirements of the Warsaw Convention. Specifically, it does not require carriers to inform passengers that they must report any damaged baggage within seven days. However, even if it did include such a requirement, it would only prevent the carrier from receiving the protection of Article 22, and would not prevent the carrier from raising lack of notice under Article 26 as a defense. Plaintiff has cited no case law in support of his claim. Accordingly, the Court finds Plaintiff's argument to be without merit.

### III. Article 4

Plaintiff also argues that Defendants cannot raise failure to give timely notice of damage as a defense because they failed to present him with a baggage ticket. Article 4(2) provides that the failure to provide a passenger with a proper baggage ticket precludes a carrier from taking advantage of the liability limitations of Article 22(2). Defendants, at this point at least, are not attempting to take advantage of the provisions of Article 22(2). Accordingly, this argument is without merit.

### IV. Article 26 [6]

■ Article 26 clearly provides that in the case of damaged baggage, a passenger must inform the carrier in writing within 7 days of the damage. This provision only applies to damaged baggage, and not to damage that is lost or destroyed. Plaintiff does not contest that he did not inform Defendants within 7 days of the damage to his luggage. Rather, he argues that Defendants (or their agents) acted with wilful intent to harm him, and therefore cannot take advantage of the notice provisions of Article 26.

Article 25 clearly provides that if a carrier wilfully causes damage to a passenger's luggage, the carrier cannot take advantage of the liability limitations provided for by the Convention. Plaintiff argues that the notice provision in Article 26 is one of the liability limits included in the Convention. Defendants argue that the notice provision is a condition precedent to suit, and is not included as a liability limitation. The Court finds Defendants' argument to be persuasive.

The Sixth Circuit Court of Appeals has not interpreted the notice provision of Article 26. Accordingly, the Court will look to decisions of other United States Circuit Courts of Appeal.

In *Highlands Insurance Co. v. Trinidad and Tobago Airways Corp.*, 739 F.2d 536 (11th Cir.1984), the defendant argued that the plaintiff's claim was barred because of the failure of the passenger to provide notice of the loss within seven days as provided by Article 26. The plaintiff argued that Article 25 precluded the defendant from taking advantage of this provision because it caused his damage. The court held, however, that

---

**6.** The Court notes that the cases that are cited *infra* were decided prior to the amendment of the Warsaw Convention by Montreal Protocol No.4. However, Montreal Protocol No. 4 only

changed the length of the notice provisions. All other substantive provisions of Article 26 remained the same.

article 25 does not deprive the carrier of the article 26 notice protections. Minutes of the negotiations on the Hague Protocol, an amendment to the Convention, indicate that the delegates understood article 25 as referring only to article 22, which establishes monetary limits for recoveries under the convention.

*Id.* at 539.

Similarly, the Fifth Circuit Court of Appeals has held that "limitation periods imposed by the Convention or by contract have not been held to be provisions limiting or excluding liability." *Butler's Shoe Corp. v. Pan American World Airways, Inc.,* 514 F.2d 1283, 1285 (5th Cir.1975).

Plaintiff has presented the Court with no case law to contradict the holdings in the above cases, and actually cites the decision in *Butler* approvingly. Plaintiff's Response, p. 5. Plaintiff does present the Court with a case which addressed the difference between carry-on baggage and checked baggage. However, the case which he cites, *Kabbani v. International Total Services,* 805 F.Supp. 1033 (D.D.C. 1992), does not hold that carry-on baggage is not subject to the limitations of Article 26.

▇ Although Article 26 includes a clause that states that its provisions do not apply in cases of fraud, it is clear that fraud, as used in Article 26, did not occur in the instant case. In *Denby v. Seaboard World Airlines Inc.,* 737 F.2d 172 (2d Cir. 1984), the Second Circuit Court of Appeals held that the fraud exception includes "any intentional acts by the carrier or its agents which significantly decrease the likelihood of the [passenger's] giving notice during the brief period allowed." *Id.* at 183. Plaintiff has not presented any evidence to show that Defendants purposely acted in such a way as to prevent him from reporting the damage to his luggage.

Lastly, although Plaintiff does not address this issue, it should be noted that the

Article 26 notice requirements only apply to baggage that is damaged, not to baggage that is lost or destroyed. Plaintiff's baggage was damaged, but he also lost $10,200. The Sixth Circuit Court of Appeals has not discussed the issue of whether property that is removed from a passengers luggage is "destroyed" or "lost." In *Denby, supra,* the court did not specifically rule on the issue, but it discussed with approval *Fothergill v. Monarch Airlines, Ltd.,* [1980] 2 Lloyd's L.R. 295, a decision by the House of Lords which did interpret the meaning of the word "damaged." In *Fothergill,* the plaintiff's luggage was damaged. The airline paid for the damage that had occurred to the luggage. After the plaintiff returned home, he discovered that a shirt, a part of sandals and a cardigan were missing from his suitcase. The plaintiff made a claim against his insurer for the loss of the personal items. His insurer brought a claim against the airline, which the House of Lords held was barred by Article 26 for failure to give notice. In the debates on the issue, several of the law Lords stated their belief that the plaintiff's claims were barred because the word "damage" as used in Article 26 also includes cases of partial loss. *Denby,* 737 F.2d at 177. In discussing the *Fothergill* case, the Second Circuit Court of Appeals stated that it "would cheerfully apply *Fothergill* to facts such as were there presented." *Id.* at 178. However, the court also stated that the case before it was more complicated than the case in *Fothergill,* because it involved container shipments. As a result, although the court approved of the decision in *Fothergill,* it declined to apply *Fothergill* to the facts before it.

Given the fact that Plaintiff does not argue that Article 26 should not apply because his money was lost rather than damaged, the Court should find *Denby* and *Fothergill* to be persuasive and should

hold that Article 26 does apply to the present case, and operates to bar Plaintiff from bringing suit because of his delay in filing a claim.

## CONCLUSION

Based on the above reasoning, the Court GRANTS Defendants' Motion for Summary Judgment.

SO ORDERED.