Patrick DALTON, Plaintiff-Appellant,

v.

DELTA AIRLINES, INC., a Delaware Corporation, duly authorized to transact business in the State of Florida, Defendant-Appellee.

No. 74–4017.

United States Court of Appeals, Fifth Circuit.

April 7, 1978.

Marion E. Sibley, Miami Beach, Fla., L. L. Robinson, Miami, Fla., for plaintiff-appellant.

W. O. Mehrtens, Jr., Miami, Fla., for defendant-appellee.

Before BROWN, Chief Judge, TUTTLE and GEE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

### The Greyhounds Who Left The Driving To Delta

Patrick Dalton, a citizen of Ireland, charged Delta Airlines with negligence in the shipment of his five greyhound racing dogs from Ireland to Miami. On August 9, 1973, the dogs were shipped from Shannon, Ireland to Miami, Florida on a through air billing. They were carried by Irish Airlines from Shannon to Boston, and by Delta Airlines from Boston to Miami. The greyhounds arrived in good condition in Boston, were temporarily taken in charge by the shipper's agent and boarded at a kennel for the night. On the following day they were delivered in good condition to Delta for shipment to Miami. Upon arrival at Miami International Airport the dogs were dead. A local veterinarian performed an autopsy which revealed that the greyhounds had suffocated. The carcasses were subsequently destroyed.

Dalton sought $60,000 in compensatory and exemplary damages for the income and profits he would have received from racing the dogs had they arrived in good condition and for their value at the time of the loss.

The parties agreed that since the negligence complained of occurred on an international air shipment the claim is governed by the Warsaw Convention, 49 U.S.C. § 1502.[1] Article 29[2] of the Convention contains a two-year statute of limitations on actions, providing that those not brought within the limitations period will be barred. Delta contended below that the action was governed by Article 26[3] and that since Dalton did not give timely written notice within 7 days as required by clause (2), he could not recover any damages, even though the suit was timely.

The lower court agreed and granted Delta's motion for summary judgment due to the undisputed fact that Dalton did not give written notice of his claim until the 20th day after the arrival of the dead greyhounds.

### The Lost Chord In The Warsaw Concerto

Since the case primarily concerns an International Convention and since Courts

---

1. *Block v. Compagnie Nationale Air France*, 5 Cir., 1967, 386 F.2d 323 n.1, *cert. denied*, 1968, 392 U.S. 905, 88 S.Ct. 2053, 20 L.Ed.2d 1363.

2. *Article 29*

(1) The right to damages shall be extinguished if an action is not brought within 2 years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the transportation stopped.

(2) The method of calculating the period of limitation shall be determined by the law of the court to which the case is submitted.

3. *Article 26*

(1) Receipt by the person entitled to the delivery of baggage or goods without complaint shall be *prima facie* evidence that the same have been delivered in good condition and in accordance with the document of transportation.

(2) In case of damage, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and at the latest, within 3 days from the date of receipt in the case of baggage and 7 days from the date of receipt in the case of goods. In case of delay the complaint must be made at the latest within 14 days from the date on which the baggage or goods have been placed at his disposal.

(3) Every complaint must be made in writing upon the document of transportation or by separate notice in writing dispatched within the times aforesaid.

(4) Failing complaint within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on his part.

seek so far as possible to obtain uniformity in interpretation, we asked the parties to file supplemental briefs on the holdings and interpretations of foreign courts and authorities concerning the applicable portions of the Warsaw Convention involved in this case. We also invited amicus briefs from carrier and shipper organizations but none was forthcoming.

Based on the supplemental briefs and the record before us we reverse the grant of summary judgment by the lower court.

■ As an international treaty accepted by the United States, the Warsaw Convention is absolutely binding. *See, e. g., Grey v. American Airlines, Inc.*, S.D.N.Y., 1950, 95 F.Supp. 756; *Indemnity Ins. Co. v. Pan American Airways, Inc.*, S.D.N.Y., 1944, 58 F.Supp. 338. Our function is to construe the Convention, determine its meaning, and then apply it fairly. *See Kelley v. Societe Anonyme Belge D'Exploitation*, E.D.N.Y., 1965, 242 F.Supp. 129, 136. In *Board of County Com'rs v. Aerolineas Peruanasa, S.A.*, 5 Cir., 1962, 307 F.2d 802, 806–07, this Court set forth other rules for construing treaties:

> [I]n construing [a] treaty, as other contracts, we give consideration to the intent of the parties so as to carry out their manifest purpose. . . . We proceed also under the admonition that where a treaty admits of two constructions, one restrictive of and the other favorable to the rights claimed under it, the latter is to be preferred.

■ Without addressing the merits of any other contentions raised on this appeal[4] we reverse for the plaintiff due to what we perceive to be a serious gap in Article 26.[5] The Article simply does not cover the fact situation here. By its own terms it is applicable only in cases of damage or delay. Our unfortunate greyhounds were neither damaged nor delayed; they were destroyed.

We find support for our holding in an article by a foreign authority, cited by Delta in its supplemental brief. Max Litvine, *Droit Aerien Notions De Droit Belge Et De Droit International* (Bruxelles, Establissements Emile Bruylant, 1970) at page 250 states (in translation):

> Article 26 presents a serious gap, as it indeed deals only with cases of damages and delays.

> What to decide in cases of loss or destruction?

> In Article 13, subparagraph 3 only will apply and the action of the one entitled to the right does not require a protest if it concerns a loss or a total destruction.

There are a number of reasons which support this reading of Article 26. At the very outset there is Article 13(3)[6] which expressly covers the situation of goods which are lost. No notice of any kind is called for either in Article 13 or in Articles 12, 13, or 14, and there is no incorporation by reference of Article 26. Likewise, Article 18(1) distinguishes between goods which are lost, those which are destroyed, and those which are damaged.[7]

There is obviously a great similarity between the loss of goods and the destruction of goods. Lost, of course, means that the location, or even the existence of, the goods is not known or reasonably ascertainable. But the common factor of lost or destroyed

---

4. Dalton contends that (i) the law does not require a person to perform a futile act, (ii) Delta cannot complain of a lack of written notice when it indisputably had actual notice of the dogs' death due to its agent's presence at the time of discovery, and (iii) Article 26 is inapplicable since dogs are not goods within its meaning.

5. See note 3, *supra*.

6. Article 13(3) provides:
 (3) If the carrier admits the loss of the goods, or if the goods have not arrived at the expiration of seven days after the date on which they ought to have arrived, the consignee shall be entitled to put into force against the carrier the rights which flow from the contract of transportation.

7. *Article 18*

 (1) The carrier shall be liable for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air.

goods is that, in either case, they are wholly without economic value or utility to the shipper/consignee beyond mere scrap value. Of course the situation of destruction of goods poses factual problems not present with lost goods, since, on our approach, there is for Article 26 purposes a decisive distinction between goods that are damaged—even severely—and those which are destroyed. But this is inherent in many cases of carrier liability. A demijohn of rare brandy falling 15 feet off the conveyor belt to the airport's concrete apron is no longer that when the container is smashed and the contents run off in the view of covetous eyes. So it is with dogs, dogs bred, born and trained for kennel racing, not just for flesh, hide or hair. Recognizing, as we must, that live dogs are goods, when dead they are no longer just damaged goods. They are not at all the thing shipped. No one better than the carrier knows this fact. Notice is not needed since notice would serve no useful purpose to the carrier.[8]

The facts of this case demonstrate the wisdom of the "no notice needed for destroyed goods" rule. The shipper's representative, presumably a trained dog handler, was at the Miami airport to pick up the dogs. Due to security restraints, he was unable to go directly to the plane. The dogs were to be brought by Delta to him at the designated pickup. When Delta's agent got there he brought, not dogs, but the sad news that the dogs were dead. Delta recognized this fact by arranging mutually with the shipper for an autopsy by a veterinarian used and selected by Delta.

■ This analysis and our result gains added strength from considering clause (1) of Article 26 (see note 3, *supra*):

(1) Receipt by the person entitled to the delivery of baggage or goods without complaint shall be *prima facie* evidence that the same have been delivered in

good condition and in accordance with the document of transportation.

Unless notice or complaint of damage is given, the receipt of the goods is itself *prima facie* proof of good order. This clause places on the shipper the burden of proving that the goods were in fact damaged after receipt by the air carrier and prior to or upon delivery to the consignee. Oddly enough, apart from this burden of proof, no restriction (other than the two-year prescription period (see note 2, *supra*)) is put on the right to sue the carrier. Whatever might be the case of damage discovered within 7 days, which might call for notice under the terms of clause (3), it would not be possible ever to comply with notice for damage discovered after 7 days. This presumably led commentators[9] during the early days of the Warsaw Convention to point out that a conflict exists between clause (1) and clause (4) which terminates any right of action against the carrier, even those in which the shipper shoulders his considerable burden of overcoming the clause (1) presumption of delivery in good condition.

The Article 26(1) presumption is triggered, of course, only on receipt of the goods. The shipper here, who never in a realistic way ever received the goods shipped—five live racers—should not be in a worse position than had there been a receipt. Of course, at the time of any such supposed or theoretical receipt, the very facts then evident to everyone and utterly incapable of subsequently being altered demonstrated not that the goods "have been delivered in good condition and in accordance with the [contract] of transportation," but quite the contrary. In the very act of attempted delivery the presumption that the goods were in good condition was irrefutably not just overcome but demolished, thus triggering the application of the provisions relating to the carrier's liability

---

8. Article 26 notice serves no purpose in relation to Article 29's prescriptive period of two years which is automatically triggered by specified events. See note 2, *supra*.

9. Raphael Coquoz, *Le Droit Prive International Aerien* (Paris, les Editions International, 1938) at 148–51; D. Goedhuis, *National Airlegislations and the Warsaw Convention* (The Hague, Martinus Nijhoff, 1937) at 281–86.

and rights (see Articles 17, 18, 19, 20 and 21).

 Thus where destruction of goods occurs on an international flight the shipper-consignee need not give Article 26(3) notice.[10]

REVERSED and REMANDED.

---

10. We have been importuned by Delta to cut off the claim at the dollar limit prescribed by Article 22(2). That matter not having been dealt with below is to be determined anew on remand.