Nevelle R. STUD, Plaintiff-Appellant,

v.

TRANS INTERNATIONAL AIRLINES, a corporation, Transamerica Airlines, a corporation, Defendants-Appellees.

No. 83–1543.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 12, 1984.

Decided March 8, 1984.

Terence S. Cox, Derby, Cook, Quinby & Tweedt, San Francisco, Cal., for plaintiff-appellant.

Drew Pomerance, William V. O'Connor, Kern, Wooley & Maloney, Los Angeles, Cal., for defendants-appellees.

Before GOODWIN, PREGERSON and NELSON, Circuit Judges.

GOODWIN, Circuit Judge.

Nevelle Stud, the owner and shipper of a horse named Super Clint, sued for damages sustained when the horse died ten days after shipment on a Transamerica flight. Stud appeals from a summary judgment for Transamerica.

In April 1980, Transamerica[1] transported Super Clint on a flight from Canada to New Zealand. Super Clint, for whom Stud had paid $300,000 the month before, seemed to be in good health upon arrival in New Zealand on April 4. Shortly afterward the horse became visibly ill; he died on April 14, 1980. A veterinarian who performed an autopsy on April 15 concluded that the cause of death was "pleuro pneumonia probably brought on by the stress of travel." A final autopsy report dated June 21, 1980, concluded that temperature fluctuations in the cabin of the airplane probably caused the illness that claimed Super Clint. On June 25, Stud's insurance agent sub-mitted a written notice of claim to Transamerica's New Zealand ground handling agent.

After negotiations with Transamerica proved fruitless, Stud filed this action for damages, alleging breach of the carriage contract, negligence, and willful misconduct. The district court held that the Warsaw Convention barred Stud's claim because Stud had failed to give Transamerica timely written notice of his loss.

The Warsaw Convention, 49 Stat. 3000, T.S. 876, 137 L.N.T.S. 11, governs the international carriage of goods by air, and thus applies to the shipment of Super Clint. Canada, New Zealand, and the United States are all parties to the Warsaw Convention in its original 1929 version. *See* Av.L.Rep. (CCH) ¶ 27,054. A protocol concluded at The Hague in 1955 amended portions of the Convention relevant to this case. 478 U.N.T.S. 371. Canada and New Zealand are parties to the Hague Protocol[2] but the earlier version of the Convention remains in force in this country because Congress has not ratified the Protocol.

Because our jurisdiction is based not simply on the existence of a federal question under the version of the Warsaw Convention in force in the United States, *see Enayati v. Lufthansa German Airlines,* 714 F.2d 75, 76 (9th Cir.1983), but on diversity of citizenship as well,[3] we are not compelled to apply the United States version of the Convention. Instead, we use the choice of law rules of California, the state in which this action was filed, to determine the applicable law. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). California applies the law of the place where a contract is to be performed, or, if a contract does not specify a place of performance, the law of the place where it was made. Cal. Civ.Code § 1646. The contract of carriage was performed by shipping Super Clint be-

---

1. Transamerica is the successor to Trans International Airlines, the first named defendant in this action.

2. 1964 Can.T.S. No. 29; 1967 N.Z.T.S. No. 11.

3. It is undisputed that the action is between a foreign citizen and a domestic corporation.

tween two Hague Protocol countries and the Air Waybill covering his shipment indicates that the contract of carriage was made in Canada, a Hague Protocol country. We therefore apply the Warsaw Convention as amended by the Hague Protocol.

■ Under the Convention, a carrier is prima facie liable for damage to goods shipped by air if the damage was caused during the transportation by air, Article 18, but can avoid this liability by proving that it and its agents took "all necessary measures" to avoid the damage. Article 20. To hold a carrier liable, the person entitled to delivery of the goods must comply with the notice of complaint requirement of Article 26(2). It states that "[i]n case of damage, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and, at the latest, within ... fourteen days from the date of the receipt in the case of goods."[4] If notice of complaint is not given within the prescribed time period, "no action shall lie against the carrier." Article 26(4). Because Stud did not complain to Transamerica within fourteen days after Super Clint's arrival in New Zealand, his action is barred.

Article 26(2) makes notice of complaint a prerequisite to recovery only "[i]n case of damage." The Fifth Circuit has recently held that Article 26(2) does not require a notice of complaint to recover for lost or destroyed goods. *Dalton v. Delta Airlines,* 570 F.2d 1244 (5th Cir.1978). This position has merit in appropriate cases. Article 18 of the Convention, which creates liability, distinguishes among destruction, loss, and damage.[5] Because the Convention's drafters made such a distinction in one Article, it is logical to construe Article 26(2), which speaks only of damage, as maintaining that distinction and not requiring notice of complaint when the goods have been lost or destroyed. Commentators from several foreign countries agree. M. Litvine, Droit Aérien 250 (1970) (Belgium); W. Guldimann, Internationales Lufttransportrecht 155 (1965) (Switzerland); H. Abraham, Das Recht der Luftfahrt 372 (1960) (West Germany).

Whether Article 26(2) requires notice of complaint thus depends on whether the shipped goods were destroyed or merely damaged. Applying this rule to the shipment of Super Clint is difficult because Super Clint presents a case of both damage and destruction. Following the analysis in *Dalton v. Delta Airlines,* Super Clint arguably was "destroyed" within the meaning of the Convention when he died. In *Dalton,* greyhounds that had been alive when handed over to the carrier died in transit. Be-

---

4. This is the Hague Protocol version of Article 26(2). *See* 478 U.N.T.S. at 385. The original version of Article 26(2), still in effect in the United States, requires notice of complaint within seven days of receipt of the goods. 49 Stat. at 3020.

5. Article 18(1), in English translation states:
   The carrier shall be liable for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air.
49 Stat. at 3019.
   The final clause of the subsection uses the word "damage" to refer to the destruction, loss and damage mentioned in the preceding clause. This does not mean, however, that the term "damage" used in Article 26(2) also encompasses destruction or loss. The confusion arises from the translation of the French text, which is the sole authentic text. *See* Article 36.
   The French text reads:

Le transporteur est responsable du dommage survenu en cas de destruction, perte ou avarie de bagages enregistrés ou de marchandises lorsque l'événement qui a causé le dommage s'est produit pendant le transport aérien.

49 Stat. at 3005.
   The English version uses one term—"damage"—to translate two different French terms —"dommage" and "avarie." The "damage" referred to in the final clause of Article 18(1) is "dommage," while the "damage" referred to in the preceding clause of Article 18(1) and in Article 26(2) is "avarie." Since Article 18(1) distinguishes among "destruction, perte ou avarie,"—"destruction, loss, or damage"—Article 26(2), which mentions only "avarie," may exclude destruction and loss. *Cf.* P. Robert, *Dictionnaire Alphabétique et Analogique de la Langue Française,* s.v. "avarie." (1970).

cause the dogs were dead on arrival, the court held that they had been destroyed, not merely damaged, observing that dead dogs were "not at all the thing shipped," 570 F.2d at 1247, and had lost all economic value beyond scrap value. But unlike the dogs in *Dalton,* Super Clint arrived alive and in apparent good health. When he left Transamerica's hands, Super Clint had been neither lost nor destroyed. At most, according to the allegations of the complaint, the horse had been damaged.

The policy underlying Article 26(2) persuades us that the condition of the goods at the time they leave the carrier's hands should determine whether notice of complaint is a prerequisite to recovery. It is reasonable to interpret Article 26(2) not to require notice of complaint for destroyed goods because the very fact of destruction gives the carrier actual notice that a claim may be forthcoming. When the carrier opens the cargo bay at the end of a flight and discovers that an animal shipped live is now dead, the carrier knows that an injury has occurred for which it may be held liable. *Dalton,* 570 F.2d at 1247; W. Guldimann, *supra,* at 155.[6] But the fact of destruction can be counted on to give the carrier actual notice only if the goods are still in its possession when the destruction occurs. Once the goods have left the carrier's possession, destruction can easily occur without the carrier's knowledge.

Post-delivery destruction resembles the situation presented by goods that are merely damaged. Mere damage to goods will often be hidden from view and fail to give the carrier actual notice of the loss. Rather than inquire in each case whether damage short of destruction was sufficiently obvious to give the carrier actual notice, Article 26(2) adopts a blanket rule making notice of complaint a prerequisite to recovery for any damage to goods. The same rule should apply to post-delivery destruction because the cause may also be hidden from the carrier. Article 26(2) required Stud to give

notice of complaint within fourteen days of receipt of Super Clint as a precondition to recovery.

Stud gave Transamerica notice of complaint on June 25, 1980, four days after he received a final autopsy report on Super Clint, but more than two months after the horse's death. Stud claims that the complaint was timely because until he received the autopsy report, he did not know that he could hold Transamerica liable.

Stud's notice of complaint was not timely. Even if we assume for the sake of argument that the fourteen-day period may be enlarged when damage to or destruction of goods could not, in the exercise of due diligence, be discovered within that period, it should not be enlarged here. Within fourteen days of receipt, a diligent shipper would have known—and Stud in fact knew—of both the damage to and the destruction of Super Clint. The Convention did not require Stud to prove to a certainty at the time of giving notice that Transamerica had caused Super Clint's death. There was no need to wait for a final autopsy report before giving notice of complaint.

█ Transamerica had actual knowledge of Super Clint's death shortly after it occurred. The horse was something of a celebrity and its death was reported in the local news media. Stud argues that this actual knowledge satisfies the notice requirement of Article 26(2). It does not. Article 26(3) requires that the notice of complaint be in writing. If written notice of a consignee's complaint is necessary to preserve the right of recovery, a carrier's actual knowledge of the loss, gleaned from a source other than a written notice of complaint, is necessarily insufficient. *Shah Safari, Inc. v. Western Airlines,* 17 Av.Cas. (CCH) 17,101 (W.D.Wash.1982); *Amazon Coffee Co. v. Trans World Airlines,* 18 Av. Cas. (CCH) 17,264 (N.Y.Sup.Ct.1983). One

---

**6.** One case has recognized the connection between destruction and actual knowledge by holding that Article 26(2) requires complaint even for destroyed goods if the destruction is not obvious enough to give notice to the carrier. *American Breeders Service v. KLM Royal Dutch Airlines,* 17 Av.Cas. (CCH) 17,103 (N.Y. Sup.Ct.1982).

884

reason for the written notice requirement is to avoid endless speculation about who knew what and when they allegedly knew it.

Stud also claims that Transamerica waived its right to a notice of complaint by engaging in settlement negotiations for nearly two years before it raised in defense the lack of notice of complaint. Because Stud did not come forward with facts showing that Transamerica had intentionally relinquished a known right to notice of complaint, *CBS, Inc. v. Merrick,* 716 F.2d 1292, 1295 (9th Cir.1983), there was no waiver and the district court properly entered summary judgment against Stud on this point.

Affirmed.