**EWIG INTERNATIONAL MARINE CORPORATION, as subrogee of Omnichem, S.A., Plaintiff,**

v.

**AMERICAN AIRLINES, INC., Defendant.**

No. 94 C 5413.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 27, 1995.

Steven B. Belgrade, Andrea J. Steinhagen, Belgrade & O'Donnell, Chicago, Illinois, for Plaintiff.

Michael J. Sehr, Benjamin A. Blume, Haskell & Perrin, Chicago, Illinois, for Defendant.

## MEMORANDUM OPINION AND ORDER

PALLMEYER, United States Magistrate Judge.

In August 1992, Omnichem S.A. ("Omnichem"), a Belgium corporation, contracted with American Airlines, Inc. ("American") to ship a refrigerated container of vincristine sulfate, a pharmaceutical product, from Belgium to Chicago, Illinois. While the product was in its custody, American misplaced the container for a period of ten days, during which time it was left unrefrigerated and rendered useless by exposure to high temperatures.

Omnichem, through its subrogee Ewig International Marine Corporation ("Ewig"), filed a two-count complaint against American in the Circuit Court of Cook County, Illinois. Pursuant to 28 U.S.C. § 1441, American removed the case to this court, which has both federal question and diversity jurisdiction under 28 U.S.C. §§ 1331, 1332, respectively. The court's federal question jurisdiction is derived from the "Warsaw Convention," an international treaty formally known as the

Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. 876 (1934), *reprinted in* 49 U.S.C.App. § 1502 note (1988). The parties have consented to have all proceedings in this matter conducted by a magistrate judge, pursuant to 28 U.S.C. § 636(c).

Defendant now moves for summary judgment, arguing that Plaintiff's claims are barred by the Warsaw Convention because Plaintiff did not timely notify American in writing that its product had been damaged or destroyed, as required by Article 26 of the Warsaw Convention. For the reasons stated below, Defendant's motion is granted and Plaintiff's complaint is dismissed with prejudice.

## FACTUAL BACKGROUND

The following statement of facts is based on the parties' Local Rule 12(m) and 12(n) statements and attachments.[1] An assertion will be deemed admitted unless the opposing party puts forward specific facts demonstrating that there is a genuine issue of material fact. *See* FED.R.CIV.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Plaintiff Ewig International Marine Corporation is a New York corporation with its principal place of business in New York City. (Def.'s 12(m) Statement ¶ 2.) Ewig is the subrogee of Omnichem, S.A., a foreign corporation with its principal place of business in Belgium. (*Id.* ¶ 1.) Defendant American Airlines, Inc. is a Delaware corporation; the parties do not identify its principal place of business, however. (*Id.* ¶ 3.)

On or about August 25, 1992, Omnichem delivered to American Airlines a shipment of vincristine sulfate for carriage from Brussels, Belgium to Aceto Corporation in Chicago, Illinois. (*Id.* ¶¶ 5, 7.) Vincristine sulfate is a pharmaceutical product used in the treatment of certain forms of cancer. (Complaint ¶ 3.) The product is harmless as long as it is

---

1. For purposes of this motion, the court will refer to Defendant's "Statement of Material Facts As To Which There Is No Genuine Issue, Entitling Defendant, American Airlines, Inc., to Summary Judgment As A Matter Of Law" as "Def.'s 12(m) Statement" and to "Plaintiff's Local Rule 12(n) Response to Defendant's Statement of Material Facts" as "Pl.'s 12(n) Statement."

refrigerated but can deteriorate and become toxic if exposed to high temperatures. (Pl's 12(n) Statement ¶¶ 4, 9, 12, 13, 15, 18.) Consequently, Omnichem packed the product in an insulated container and surrounded it with dry ice. (Plaintiff's Response to Defendant's Motion for Summary Judgment on its Sixth Affirmative Defense (hereinafter "Plaintiff's Response"), at 1.) In addition, Omnichem included on the shipment's air waybill[2] and delivery receipt the instruction "MUST BE KEPT IN REFRIGERATOR BETWEEN 2 AND 10 DEGREES." (Exs. A, B to Plaintiff's Response.)

Unfortunately, the shipment was lost in America's cargo facility at Chicago's O'Hare Airport from August 26, 1992 to September 5, 1992. (Def.'s 12(m) Statement ¶ 6.) During this time, Aceto repeatedly warned American employees by phone that the vincristine sulfate could become toxic or dangerous if it were not kept refrigerated. (*See* American Airlines' Trace[3] from 9/01/92–9/5/92, Ex. B to Pl.'s 12(n) Statement.) American's record of trace of the shipment includes the following notations:

> TURN TOXIC IN HOT PUT IT IN THE COOL
>
> (*Id.*, lines D3/PSC3 and ID3/PSC3.)
>
> SHPR CALLED TO SAY SHPMT MAY BECOME TOXIC IF NOT REFRIDGORATED [sic] ... NN TO BE FOUND SOON .. IBC FROM SUSHMA[4] ... SAYS SHPMT MAY BECOME TOXIC IF DRY ICE EVAPORATES AND SHPMT THAWS.

(*Id.*, lines X13/0 to X16/0.)

> ALSO PC SHOULD BE REFRIGERATED AND IT WAS NOT IN COOLER.

(*Id.*, lines X36/T to X37/T.)

> PER ABV ORD SAYS NOT IN COOLER ... PER MR UNGER[5] THEY CHECKED COOLER YESTERDAY SO WE KNOW IT IS NOT THERE ... NN TO LOOK ELSEWHERE.... PER I FIELD THIS STUF [sic] GETS TOXIC IF NOT KEPT COOL.

(*Id.*, lines X53/T to X56/T.)

> * * * * IF SHPMNT FOUND ANY TIME PLZ CTC SHPR–CNEE .. IS WORTHLESS–DANGEROUS IF USED/INJECTABLE DRUGS—VERY IMPORTANT IT IS DESTROYED PROPERLY * * *

(*Id.*, lines X60/T to X62/T.)

In addition to the conversations described above, Aceto advised American in writing of the importance of keeping the product cool. In a letter dated September 2, 1992, Aceto requested that American continue to search for the shipment, explaining that "[i]n the event the shipment is found, it must be kept under refrigeration, and must not be opened for any reason." (Letter from Aceto Corp. to American Airlines of 9/2/92, Ex. 2 to Def.'s 12(m) Statement.) Aceto also informed American that it was holding the airline responsible for the "missing" shipment in the amount of $98,526.54, adding that "the value [] makes it imperative that an extensive search is made to locate these goods." (*Id.*)

---

**2.** An air waybill, like a bill of lading, includes the shipment's date and place of departure; its final destination; the names and addresses of the consignor, carrier, and consignee; the nature, quantity or volume, and value of the goods; the apparent condition of the goods and their packing; and a statement that the shipment is subject to the rules of the Convention. *See* Warsaw Convention, Art. 8, 49 U.S.C.App. § 1502 note.

**3.** The "trace" is American's record of its efforts to locate the missing shipment and its conversations with Aceto Corp. during this period.

**4.** Sushma Babbar is an employee of Aceto Corporation who was in contact with American during its attempts to locate the shipment. Babbar describes her involvement in an affidavit, attached as Ex. A to Plaintiff's 12(n) Statement. American has objected to several paragraphs of the affidavit on the grounds that Babbar was not

competent to testify to the facts stated in it. (*See* Defendant American Airlines, Inc.'s Reply in Support of its Motion for Summary Judgment on its Sixth Affirmative Defense, at 10–11.) The court will admit Babbar's statements concerning her own communications with American but will sustain the objections to references in the affidavit to communications between American and other Aceto employees. As discussed later in this opinion, the admissibility (or not) of Babbar's affidavit does not affect the resolution of Defendant's summary judgment motion. *See infra* note 9.

**5.** Mr. Unger was involved in the efforts to locate the shipment, but it is not clear whether he was an employee of American, Aceto, O'Hare, or some other organization.

American finally located the shipment on September 5, 1992 in an unrefrigerated condition. (Pl.'s 12(n) Statement ¶ 8.) Aceto did not accept the shipment, fearing that it may have become toxic, volatile, and thus hazardous to any person who may open it. (*Id.* ¶¶ 9, 13.) Nor did Aceto or American ever open the container to determine whether or to what extent the goods were damaged, owing to Aceto's specific instructions to return the shipment unopened to its manufacturer, Omnichem. (*Id.* ¶¶ 9, 13; Def.'s 12(m) Statement ¶ 13.) These warnings and instructions appear in a letter from Aceto to American dated September 14, 1992. In pertinent part, the letter states:

> **VINCRISTINE SULFATE** loses potency when removed from refrigeration. American Airlines has not kept this product under refrigeration as per Bill of Lading instructions. *It might, in this case, no longer meet the specifications of the Pharmacopeia, and be therefore, unusable for medicinal purposes.* In addition, the price is based on material being 100% active. If, and as it loses potency, the percentage lost would be worked into the value of the product.
>
> Omnichem, the shipper and producer, is willing to accept the return of the goods. *Upon receipt they will analyze the product and then determine whether it is usable as is, whether it has to be reworked, or whether it has to be disposed of.* If reworking is done, there would be a cost involved both in reprocessing and possible loss of potency.
>
> Please assure us any claim of any monies involved in the re-working or disposal of the material will be agreed upon and paid by your firm.
>
>     *     *     *     *     *     *
>
> **URGENT! RETURN SHIPMENT MUST BE KEPT IN REFRIGERATOR BETWEEN 2 AND 10 DEGREES CENTIGRADE.**

(Letter from Aceto Corp. to American Airlines of 9/14/92, Ex. 3 to Def.'s 12(m) Statement (bold in original; italics added).)

**6.** The parties do not explain when American first received this July 1993 telefax or how Kennedy,

Pursuant to Plaintiff's instructions, American returned the shipment (without charge) to Omnichem on September 23, 1992, some thirty days after the airline had initially assumed custody and control of the shipment. (Def.'s 12(m) Statement ¶ 11; Pl.'s 12(n) Statement ¶ 10.) At some point in time, Omnichem found the product to be "out of specs" and "not recoverable" and consequently disposed of it by incineration. (Telefax from Omnichem to Kennedy Lillis Schmidt & English of 7/9/93, Ex. 5 to Def.'s 12(m) Statement.) [6]

A key issue in this case is whether American was appropriately notified that the shipment had been damaged or destroyed. American asserts that prior to the filing of this complaint in July 1994, it was not notified that the shipment had actually been damaged or destroyed. (Def.'s 12(m) Statement ¶¶ 12, 15, 16, 18.) Consequently, American closed its claim for the loss of the shipment and declined to investigate whether and to what extent damage had occurred and American was at fault. (*Id.* ¶ 14.) Plaintiff denies that American was not given notice of this loss, pointing to the conversations between American and Aceto during the time the shipment was missing, as well as American's awareness that the shipment had not been refrigerated during that period, that Aceto had refused to accept delivery, and that Aceto ordered the shipment returned to Omnichem. (Pl.'s 12(n) Statement ¶¶ 12, 15, 16, 18.) Plaintiff does not argue that such notice satisfied Article 26, however. Rather, Plaintiff argues that written notification was not required as a matter of law.

### DISCUSSION

American has moved for summary judgment, which may be granted if there are no genuine issues of material fact and American is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this case, there are few pertinent factual disputes. The only question is whether the facts are

Lillis, Schmidt & English are connected with the parties or this matter.

such that American is entitled to judgment as a matter of law.

■ American asserts that the controlling body of law is the Warsaw Convention, an international treaty that applies to all transportation of people, baggage, and goods by aircraft, either gratuitously or for hire, between the Convention's signatory nations. *See* Warsaw Convention Art. I(1), 49 U.S.C.App. § 1502 note. Both Belgium and the United States are members of the treaty.[7] Thus, the Warsaw Convention has the force of U.S. domestic law and, where it applies, affords the exclusive remedy in actions against air carriers. *See Onyeanusi v. Pan American World Airways, Inc.*, 952 F.2d 788, 790, 793 (3d Cir.1992).

The stated purpose of the Convention is to establish a uniform system of liability and documentation in international air travel. Warsaw Convention (introduction), 49 U.S.C.App. § 1502 note. For example, the Convention makes an air carrier liable for the destruction, loss, or damage to any goods placed in the custody of the carrier, *id.* Art. 18, as well as any damage resulting from a delay in the transportation of such goods. *Id.* Art. 19. The Convention also limits the carrier's liability in certain situations, such as when the carrier took all necessary measures to avoid damage or when the damage was caused by the negligence of the injured party. *See id.* Arts. 20, 21. *See also Onyeanusi*, 952 F.2d at 792 (twin goals of the Convention are to create uniformity in the filing of claims and, more importantly, to limit the potential liability of air carriers).

The Warsaw Convention further protects carriers by requiring a party experiencing damage to its goods to complain to the airline in writing and within a specified period of time. *See* Warsaw Convention Art. 26, 49 U.S.C.App. § 1502 note. If the injured party

fails to provide such timely, written notice, the party loses its right to seek recovery from the carrier. *Id.* Art. 26(3), (4). Because these provisions are of central importance to Defendant's motion, they are reprinted in their entirety below:

(1) Receipt by the person entitled to the delivery of baggage or goods without complaint shall be *prima facie* evidence that the same have been delivered in good condition and in accordance with the document of transportation.

(2) *In case of damage,* the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and at the latest, within 3 days from the date of receipt in the case of baggage and 7 days from the date of receipt in the case of goods. In case of delay the complaint must be made at the latest within 14 days from the date on which the baggage or goods have been placed at his disposal.

(3) *Every complaint must be made in writing* upon the document of transportation or by separate notice in writing dispatched within the times aforesaid.

(4) *Failing complaint within the times aforesaid, no action shall lie against the carrier,* save in the case of fraud on his part.

*Id.* Art. 26 (emphasis added).

American claims that it did not receive written notification that Omnichem's shipment had actually been damaged or destroyed until the filing of this complaint in July 1994, some 22 months after the shipment had been misplaced, recovered, and returned to Omnichem. Given that there have been no allegations of fraud (Def.'s 12(m) Statement ¶ 19), American argues that Plaintiff's claim is barred by Article 26.[8]

---

**7.** Belgium was among the original signatories to the Warsaw Convention in October 1929. *See* Warsaw Convention (introduction), 49 U.S.C. § 1502 note. The United States became a party to the Convention in October 1934. *See* 49 U.S.C.App. § 1502 historical note.

**8.** American asserts the seven-day limit in Article 26(2) applies because the goods were damaged en route. (Memorandum of Law in Support of Defendant's Motion for Summary Judgment on

its Sixth Affirmative Defense (hereinafter "Defendant's Memorandum") at 4.) Although Plaintiff does not contest this assertion (*see* Plaintiff's Response at 7), it is arguable that the fourteen-day time limit should apply because the damage was caused by the delay in shipment. This is not a material issue, however, given that Defendant claims it did not receive written notification until 22 months after the events in question.

█ Plaintiff does not dispute that neither Aceto or Omnichem satisfied Article 26's requirements for timely, written notice, although Plaintiff asserts that the circumstances surrounding the shipment and conversations between American and Aceto employees were such that American was aware that the vincristine sulfate had been ruined by the heat.[9] (*See* Plaintiff's Response at 2–5.) Rather, Plaintiff argues that the notice requirements of Article 26 do not apply to this case because: (1) the vincristine sulfate had not been merely damaged but completely destroyed; (2) the goods in question were never received by Aceto; and (3) there was no air waybill for the return flight to Omnichem. On this basis, Plaintiff urges that the court deny Defendant's motion.

## I. Whether notice that the shipment had been destroyed was required

█ Plaintiff argues that the notice requirements of Article 26 do not apply because the shipment of vincristine sulfate had been destroyed, as opposed to merely damaged or delayed. The key cases on this point are *Dalton v. Delta Airlines, Inc.*, 570 F.2d 1244 (5th Cir.1978) and *Hughes–Gibb & Co. v. Flying Tiger Line, Inc.*, 504 F.Supp. 1239 (N.D.Ill.1981). In *Dalton,* the shipper sued the air carrier for the loss of five greyhound racing dogs, which suffocated and died in transit from Ireland to Florida. *Id.* at 1245. The district court granted the airline's motion for summary judgment because the plaintiff had not given notice under Article 26. *Id.* The Fifth Circuit reversed and remanded the case, observing that "by its own terms" Article 26 applies only when goods have been damaged or delayed in transit, not when they have been destroyed.[10] *Id.* at 1246. "Destroyed" goods, the court explained, "are wholly without economic value or utility to the shipper/consignee beyond mere scrap value." *Id.* at 1246–47. In this

respect, they resemble lost goods, for which the Warsaw Convention does not require written notice. *Id.* at 1246–47. Finally, the court observed that written notice would have served no useful purpose because it was obvious to the carrier that the greyhounds had been destroyed, just as it would have been obvious had a demijohn of brandy fallen 15 feet and shattered on the airport's tarmac. *Id.* at 1247.

*Dalton*'s "no notice for destroyed goods" rule was adopted in *Hughes–Gibb,* in which the shipper sued the air carrier to recover for 60 breeding swine that died en route from Chicago, Illinois to the Philippines. 504 F.Supp. at 1240–41. The defendant moved for summary judgment for failure to give timely written notice under Article 26. *Id.* at 1241. Finding *Dalton* to be dispositive, the court concluded that the plaintiff was not required to give the defendant written notice of the loss of its swine and consequently denied the defendant's motion. *Id.* at 1243. Based on *Hughes–Gibb* and *Dalton,* Plaintiff here argues that its shipment of vincristine sulfate was destroyed while it was in the carrier's custody; thus, written notice to American was not required under Article 26.

The present case, however, is readily distinguishable from *Dalton* and *Hughes–Gibb.* In both of these earlier cases, the carriers knew of the destruction of the animals as soon as they landed, a fact highlighted by the courts. *See Dalton,* 570 F.2d at 1247; *Hughes–Gibb,* 504 F.Supp. at 1243. Here, by contrast, it was not immediately apparent to American, or even Aceto or Omnichem, that the vincristine sulfate had actually been destroyed by its prolonged storage in an unrefrigerated condition. Certainly American had been warned, even before the shipment left Belgium but especially during the period it was misplaced, of the *risks* of not refrigerating the chemicals. Yet the record also

9. Even the affidavit of Sushma Babbar, portions of which American has moved to strike, shows only that American was given oral—not written—notice of the potential harm to the unrefrigerated shipment of vincristine sulfate. Thus, even if the affidavit were admitted in its entirety, it would not satisfy Article 26's requirements for written notification of actual damage, nor would it create a genuine issue of material fact as to whether such written notice was ever given. *See supra* note 4.

10. As noted by the court, Article 26 requires written notice "[i]n case of damage" or "[i]n case of delay" of goods or baggage but does not mention destroyed goods. *See* Warsaw Convention, Art. 26(2), 49 U.S.C.App. § 1502 note.

shows that the shipment's actual destruction was *not* a foregone conclusion. In a letter written to American some nine days after the shipment had been located, Aceto wrote only that the shipment "might" have lost its potency as a result of having been left unrefrigerated. (Letter from Aceto to American of 9/14/92, Ex. 3 to Def.'s 12(m) Statement.) More significantly, in the same letter Aceto advised American that upon receipt of the returned shipment, Omnichem would determine "whether [the vincristine sulfate] is usable as is, whether it has to be reworked, or whether it has to be disposed of." (*Id.*) In other words, unlike Dalton's greyhounds or Hughes–Gibb's swine, it was not apparent whether the vincristine sulfate had been merely damaged, and thus covered by Article 26, or completely destroyed, and thus outside of Article 26, or even left unharmed. Thus, where the destruction is not obvious or otherwise known to the carrier, *Dalton*'s "no notice for destroyed goods" rule does not apply.

Other courts have reached the same conclusion. In *Highlands Insurance Co. v. Trinidad and Tobago Airways Corp.*, 739 F.2d 536 (11th Cir.1984), the court explained that the *Dalton* rule has been applied only to cases involving the shipment of live animals that died before delivery. *Id.* at 539 (collecting cases). Were the rule to apply beyond animal cases, the court stated, it should control only "where the destruction is both total and obvious," such as the shattering of the demijohn of brandy. *Id.* at 539 (citing example in *Dalton*). Such was not the situation presented by *Highlands*. There the plaintiff's subrogor, observing the defendant's employees throwing his fragile electronic components from a storage rack to the floor approximately 18 feet below, assumed that his goods had been harmed but did not confirm that the entire shipment had been severely damaged until three days afterwards. *Id.* at 538. Another thirteen days passed before the carrier received written notice of the loss. *Id.* The court found *Dalton* inapplicable and the plaintiff's claim time-barred by Article 26 because the items had been securely packed and the carrier did not have

actual notice of the loss. *Id.* at 539. The court also concluded that a notation on the delivery receipt that the electronic parts were "lift inoperative" was not sufficient notice under Article 26 because it did not inform the carrier of the nature of the damages actually claimed. *Id.* at 540.

*Highlands* bears several similarities to the present case. Here, Aceto and Omnichem, like Highlands' subrogor, knew that the vincristine sulfate had probably been damaged or even destroyed but did not confirm the actual loss until some time after the shipment had been returned to Omnichem. While American, like the carrier in *Highlands*, was aware of the risks, American did not receive timely, written notice of actual harm; in fact, as noted earlier, Aceto's September 14, 1992 letter to American suggested that there was some possibility that the vincristine sulfate might still be usable or recoverable. Finally, the warnings about refrigeration that American received before and during the period the shipment was misplaced resemble the notation "lift inoperative" in *Highlands* in that the warnings, which were mostly oral, advised the carrier of certain risks but did not inform American of the actual damages claimed.

*Amazon Coffee Co. v. Trans World Airlines, Inc.*, 111 A.D.2d 776, 490 N.Y.S.2d 523 (App.Div.1985) is also instructive on the inapplicability of the *Dalton* rule to the non-obvious destruction of goods. In *Amazon Coffee*, the shipper sued the carrier for the destruction of a shipment of perishable cheese. Citing *Highlands*, the court found *Dalton* and *Hughes–Gibb* to be inapplicable because the destruction of the cheese "was not obvious" and the defendant had been unaware that it had perished, if indeed it had done so, before it was delivered. *Id.* at 777–78, 490 N.Y.S.2d at 524–25. In other words, the court distinguished between "latent destruction," which requires notice, and "patent destruction," which, under *Dalton* and *Hughes–Gibb*, does not. *Id.* For these and other reasons, the court affirmed dismissal of one count in the plaintiff's complaint due to the plaintiff's failure to give the carrier notice under Article 26.[11] *Id.* at 777–78, 490 N.Y.S.2d at 524–25.

**11.** As for the second count in the plaintiff's two-count complaint, the court denied summary

In the same fashion, this court believes that Plaintiff's loss was a latent, not a patent, destruction of the vincristine sulfate, particularly in light of Aceto's letter affirmatively representing that there was a chance the shipment might still be usable or recoverable. *Dalton*'s "no notice for destroyed goods" rule is thus inapplicable to this set of facts, and American was entitled to written notice of actual harm pursuant to Article 26.

## II. Whether notice was required when Aceto did not receive the shipment

■ Plaintiff also argues that Article 26 is inapplicable because the shipment in question was never completed. Plaintiff points to the first paragraph of Article 26, which states:

> Receipt by the person entitled to the delivery of baggage or goods without complaint shall be *prima facie* evidence that the same have been delivered in good condition and in accordance with the document of transportation.

Warsaw Convention Art. 26(1), 49 U.S.C.App. § 1502 note (emphasis added). In this case, "the person entitled to delivery," namely, Aceto (or its customs broker Danzas) never received the goods at all because Aceto refused to accept delivery and ordered the shipment returned to Omnichem. Consequently, Plaintiff argues, American cannot seek refuge in Article 26's notice requirements.

Plaintiff, however, cites no case law to support the argument that the Warsaw Convention does not apply where delivery is not completed. In fact, Article 26(1) does not state that notice is required only when the goods are received by the intended recipient, as Plaintiff suggests. Rather, Article 26(1) states only that receipt is *prima facie* evidence that the goods have been delivered in good condition. Thus, if delivery had been made, and the condition of the delivered goods were disputed, then American could rely on the intended recipient's silence as *prima facie* evidence in its favor. Here, it is undisputed that the chemical shipment was not delivered to Aceto. This failure does not render the notice requirements of the Warsaw Convention inapplicable.[12]

■ The court sympathizes with Plaintiff's implicit contention that the circumstances here suggest that American had at least constructive notice of Plaintiff's damage claim. American was told repeatedly that exposure to heat could damage or destroy the vincristine sulphate, and knew that Aceto had refused to accept delivery. Case law reveals, however, that even actual or constructive notice does not meet the Warsaw Convention's requirement. In *Onyeanusi v. Pan American World Airways, Inc.*, 952 F.2d 788, 789 (3d Cir.1992), the plaintiff sued the carrier for mishandling his mother's corpse, which had been exposed to the weather and decomposed when its airtray broke open en route to Nigeria. Although *Onyeanusi* involved damage rather destruction of goods, the case is instructive in that the court considered whether the carrier's "actual or constructive notice" that the corpse had been damaged constituted sufficient notice under Article 26. *Id.* at 794. The court concluded it did not, because Article 26 "clearly requires written notice" from the injured party that the goods have been damaged, even when the carrier is already aware of or sus-

judgment because there was a genuine issue of material fact as to whether notice had been given. *Amazon Coffee*, 111 A.D.2d at 777, 490 N.Y.S.2d at 524.

12. Although neither party has cited it, the court has considered somewhat analogous provisions in the Carriage of Goods by Sea Act, 46 U.S.C. § 1300 *et seq.* ("COGSA"). Under COGSA, where the person entitled to delivery accepts goods without providing written notice of loss or damage, such acceptance constitutes "prima facie evidence of the delivery by the carrier of the goods as described in the bill of lading." 46 U.S.C. § 1303(6). Unlike the Warsaw Conven-

tion, which expressly provides that, absent timely written notice, "no action shall lie against the carrier [except for fraud]," COGSA by its terms provides that the absence of written notice "shall not affect or prejudice the right of the shipper to bring suit" so long as such suit is filed within one year after the expected delivery. 46 U.S.C. § 1303(6). Courts have held that neither misdelivery, nor even non-delivery, of shipped goods bars the carrier from relying on the statute of limitations and other protections of COGSA. *B.M.A. Industries, Ltd. v. Nigerian Star Line, Ltd.*, 786 F.2d 90, 92 (2nd Cir.1986).

pects there is a problem.[13] *Id.* Here, similarly, while American may have had "actual or constructive notice" that the vincristine sulfate had been ruined, such notice did not satisfy Article 26.

In brief, the fact that Aceto refused to accept delivery of the vincristine sulfate and ordered its return to Omnichem does not imply that American was not entitled to written notice of the damage, particularly when the evidence of the loss was not obvious or known to the parties. Having found that Article 26 is applicable, the court does not believe that American's actual or constructive knowledge, based on Aceto's actions and representations, satisfied the Article's notice requirements.

### III. Whether notice was required when there was no air waybill

■ Finally, Plaintiff argues that the Warsaw Convention does not apply to this set of facts because there was no air waybill or other documentation for American's shipment of the vincristine sulfate back to Omnichem in Belgium. This is significant because, according to Plaintiff, American is holding Omnichem responsible as the consignee of the shipment and, thus, the party responsible for giving notice to American. Where there is no air waybill, there is no contract of carriage, and the Warsaw Con-

vention does not apply, argues Plaintiff. (Plaintiff's Response at 6–7.)

Plaintiff's assumption that there is no contract where there is no air waybill is incorrect, however. Article 5(2) makes clear that the absence of an air waybill does not affect the existence or validity of a contract of transportation, nor does it affect the applicability of the Warsaw Convention, subject to the provisions of Article 9.[14] *See* Warsaw Convention Art. 5(2), 49 U.S.C.App. § 1502 note. Two questions arise, then: first, whether there was a contract for transportation for the shipment's return flight; and second, whether the Convention is applicable to such contract.

With regard to the first question, the court believes the facts of this case are such that the return flight cannot be viewed in isolation but must be taken together with the original (unsuccessful) shipment to Aceto. Rather than two separate shipments, then, this case more closely resembles a single transportation operation performed by successive carriers, as described in Article 1(3) of the Warsaw Convention.[15] Under Article 30(1), the carriers (in this case, both American Airlines) are subject to the rules of Warsaw Convention and deemed to be contracting parties, while Article 30(3) states that either the consignor or consignee (*i.e.,* either Aceto or Omnichem) may take action against the carrier (American) that was transporting the goods

---

13. In pertinent part, the court explained:

As for Pan Am's actual or constructive notice, Pan Am very well might have known of damage to the corpse when it was delivered to Onyeanusi [the plaintiff]. Indeed, there is some evidence that Pan Am agents knew the body was missing and might suffer damage and decomposition as a result of the delay. *Nevertheless, the Warsaw Convention clearly requires written notice.... The clear dictates of Article 26(3) require written notice even if an agent of the air carrier has made some affirmative representations that she is aware of the damage or delay....* This notice requirement is only waived when goods are destroyed.... In this case, Onyeanusi made no claim that his mother's remains were destroyed or lost completely, therefore he was not excused from the written notice requirements.

*Onyeanusi,* 952 F.2d at 794–95 (emphasis added; cites, quotes, footnote omitted).

14. Specifically, Article 5(2) states:

The absence, irregularity, or loss of this document [the air waybill] shall not affect the exis-

tence or the validity of the contract of transportation which shall, subject to the provisions of article 9, be none the less governed by the rules of this convention.

Warsaw Convention Art. 5(2), 49 U.S.C.App. § 1502 note.

15. In its entirety, Article 1(3) states:

Transportation to be performed by several successive air carriers shall be deemed, for the purposes of this convention, to be one undivided transportation, if it has been regarded by the parties as a single operation, whether it has been agreed upon under the form of a single contract or of a series of contracts, and it shall not lose its international character merely because one contract or a series of contracts is to be performed entirely within a territory subject to the sovereignty, suzerainty, mandate, or authority of the same High Contracting Party.

Warsaw Convention Art. 1(3), 49 U.S.C.App. § 1502 note.

when the destruction, loss, damage or delay took place.[16] *See* Warsaw Convention Art. 30(1), (3), 49 U.S.C.App. § 1502 note. Consequently, the court concludes there was a contract for carriage for the return flight to Omnichem, even if the parties completed an air waybill only for the initial delivery to Aceto.

As for the question whether this contract is governed by the Warsaw Convention, Article 5 directs the court's attention to Article 9, which states that if a carrier accepts the goods without an air waybill, "the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability."[17] *Id.* Art. 9. Notably, Article 9 does not state that the Warsaw Convention does not apply at all, as Plaintiff seems to suggest; it states only that the carrier may not take advantage of certain limits on liability.

█ Case law strongly suggests that the provisions that "exclude or limit" liability mentioned in Article 9 do not include Article 26, particularly its fourth paragraph that allows a carrier to escape liability where it has not received timely, written notice of damage to goods. *See Onyeanusi,* 952 F.2d at 794; *Highlands,* 739 F.2d at 539–40; *Butler's Shoe Corp. v. Pan American World Airways, Inc.,* 514 F.2d 1283, 1285 (5th Cir.1975). Al-though these cases actually involved interpretation of Article 25 rather than Article 9, they are nonetheless relevant to this discussion because of similarities between these two articles. Article 25 states that in cases of wilful misconduct, "[t]he carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability."[18] Warsaw Convention Art. 29(1), 49 U.S.C.App. § 1502 note. Courts have held that Article 26 is not among those "provisions ... which exclude or limit [the carrier's] liability"; thus, carriers are entitled to written notification under Article 26 even if they may have engaged in wilful misconduct under Article 25. *See Onyeanusi,* 952 F.2d at 794 (Article 25 excuses only limitations on monetary liability, not requirements of notice); *Highlands,* 739 F.2d at 539–40 (Article 25 does not deprive carrier of Article 26 notice requirements); *Butler's Shoe,* 514 F.2d at 1285. The same reference in Article 25 to provisions that "exclude or limit [the carrier's] liability" is also found in Article 9. Thus, it is a simple extension of these cases to conclude that the absence of an air waybill does not mean that American cannot avail itself of Article 26's notice requirements.

In sum, the court finds that regardless of the absence of an air waybill for the vincristine sulfate's return flight to Omnichem, the parties did have a contract of carriage for

---

**16.** In relevant part, Article 30 states:

(1) In the case of transportation to be performed by various successive carriers and falling within the definition set out in the third paragraph of article 1, *each carrier who accepts passengers, baggage or goods shall be subject to the rules set out in this convention, and shall be deemed to be one of the contracting parties to the contract of transportation* insofar as the contract deals with that part of the transportation which is performed under his supervision.

  *  *  *  *  *  *

(3) As regards baggage or goods, the passenger or consignor shall have a right of action against the first carrier, and the passenger or consignee who is entitled to delivery shall have a right of action against the last carrier, and further, *each may take action against the carrier who performed the transportation during which the destruction, loss, damage, or delay took place.* These carriers shall be jointly and severally liable to the passenger or to the consignor or consignee.
Warsaw Convention Art. 30(1), (3), 49 U.S.C.App. § 1502 note (emphasis added).

**17.** In its entirety, Article 9 states:

If the carrier accepts goods without an air waybill having been made out, or if the air waybill does not contain all the particulars set out in article 8(a) to (i), inclusive, and (q), the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability.
Warsaw Convention Art. 9, 42 U.S.C. § 1502 note. For a brief description of an air waybill's "particulars," as set forth in Article 8, see note 2, *supra.*

**18.** In pertinent part, Article 25 states:

(1) The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct.
Warsaw Convention, Art. 25(1), 49 U.S.C.App. § 1502 note.

this flight; that such contract was subject to the Warsaw Convention; and that the Convention does not prevent American from taking refuge in the notice requirements of Article 26. Consequently, Plaintiff's claim is barred as untimely under Article 26.

### IV. *Whether Aceto's September 14 letter was sufficient notice under Article 26*

Given the seemingly harsh and technical requirements of Article 26, it is worth exploring *sua sponte* whether Aceto's September 14, 1992 letter to American was adequate written notice of damage or destruction of the vincristine sulfate. In this letter, which was prepared some nine days after American located the missing shipment, Aceto advised American that vincristine sulfate loses its potency if not refrigerated; directed American to return the shipment to Omnichem for analysis; and sought assurances that American would pay for any expenses involving in reworking or disposing of the product. (*See* Letter from Aceto to American of 9/14/92, Ex. 3 to Def.'s 12(m) Statement.) Assuming the letter was timely,[19] one could argue that it did give American sufficient notice under Article 26.

The court, however, believes that the letter expressed only the *possibility* that the shipment had been damaged, not that it *actually* had been destroyed. This is borne out by Aceto's own statements in the letter that the shipment "might" have been damaged or destroyed, and that Omnichem would determine whether the product was usable, recoverable, or ruined. (*Id.*) The court believes that where a party affirmatively represents that a shipment may in fact be undamaged, notice of only potential harm, or notice given before the damage or destruction has actually been ascertained, is not sufficient to satisfy Article 26. *Cf. Onyeanusi,* 952 F.2d at 794 (carrier's actual or constructive knowledge of damage did not satisfy Article's 26's clear requirements for written notice).

The court recognizes that other cases may appear to have come out differently. *See Maschinenfabrik Kern, A.G. v. Northwest Airlines, Inc.,* 562 F.Supp. 232, 235, 237 (N.D.Ill.1983) (carrier's own observation of "at least actual possible damage" to shipment

of copying machines was sufficient to satisfy Article 26, even though carrier did not know conclusively that the machines were damaged); *B.R.I. Coverage Corp. v. Air Canada,* 725 F.Supp. 133, 137–38 (E.D.N.Y.1989) (letter informing carrier that shipment of furs had not arrived and that the carrier would be held responsible for the missing goods satisfied Article 26's notice requirement for damaged goods, even though the parties did not know at that time that the furs had been ruined by water damage); *Pesquera Navimar, S.A. v. Ecuatoriana De Aviacion,* 680 F.Supp. 1526, 1527–28 (S.D.Fla.1988) (notation on air waybill that boxes of frozen shrimp had arrived soft, wet, and overly warm was sufficient notice, even though the parties did not know whether the goods inside had in fact been damaged). Neither Plaintiff nor Defendant has discussed these cases, which the court believes are distinguishable from the present case; in none of these cases did the shipper or intended recipient affirmatively represent to the carrier that the goods may still be usable or recoverable, as was the case here. Also, to the extent that these district court decisions differ from the Third Circuit's decision in *Onyeanusi,* the latter case is controlling.

Having belabored a point that the parties themselves have not raised, the court concludes that Aceto's September 14 letter did not satisfy Article 26's notice requirements.

### CONCLUSION

For all the reasons given above, the court finds none of Plaintiff's objections to the application of the Warsaw Convention or the notice requirements of Article 26 to be persuasive. Furthermore, the court finds that while American may have had notice of potential harm to the vincristine sulfate shipment, such notice was not sufficient to satisfy the requirements of timely notice of actual harm under Article 26. Consequently, the court finds that Plaintiff's action is barred as untimely under Article 26 of the Warsaw Convention. Defendant's motion is granted.

---

**19.** *See note 7, supra.*